# EXHIBIT B

# CORNERSTONE ONDEMAND, INC.

# SERVICE DOCUMENTS

**Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:**   Catalina Mototolea
CORNERSTONE ONDEMAND, INC.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404-4087

**RE:**   **Process Served in California**

**FOR:**   Cornerstone OnDemand, Inc.  (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Robyn Barker and Chris Barker // To: Cornerstone OnDemand, Inc. |
| **CASE #:** | 2025CP4003398 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/14/2025 at 12:38 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Catalina Mototolea  cmototolea@csod.com |
| | Email Notification,  Shanna Laughton  slaughton@csod.com |
| | Email Notification,  Ed Kaufman  ekaufman@csod.com |
| | Email Notification,  Lisa DePriest  ldepriest@csod.com |
| | Email Notification,  Catalina Mototolea  cmototolea@csod.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>866-539-8692<br>CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                    Wed, May 14, 2025
**Server Name:**             Shaunt Demirchyan

| Entity Served | CORNERSTONE ONDEMAND, INC. |
|---|---|
| Case Number | 2025CP4003398 |
| Jurisdiction | CA |

| Inserts |
|---|
| | | |



SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Barker & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc
Defendant(s)

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No. **2025CP400** 3398

Submitted By: Robyn Barker
Address: 2195 Harvestwood Lr
         Chapin, SC  29036

SC Bar Number: _____
Telephone #: 803-413-9702
Fax #: _____
Other: _____
Email: rebarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**DOCKETING INFORMATION (*Check all that apply*)**

*If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.

☐ **NON-JURY TRIAL** demanded in complaint.

☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #
_____
☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

**2025CP400**3398

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>                      Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; and Himanshu Palsule,<br><br>                    Defendants. | IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br><br>SUMMONS |

JEANETTE W. McBRIDE
C.C.P., G.S., & F.C.
2025 MAY 13 PM 3: 16
RICHLAND COUNTY
FILED

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Page 1 of 2

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

**STATE OF SOUTH CAROLINA**

**COUNTY OF RICHLAND**

**2025CP400**3398

Robyn Barker and Chris Barker,

Plaintiff,

v.

Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule,

Defendants.

**IN THE COURT OF COMMON PLEAS**

CASE NO.: _____

**COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED**

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination,** and **wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD),** following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD")**, **Clearlake Capital Group, L.P. ("Clearlake")**, and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants**."

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina**. During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity**. Although physically located in South Carolina, Plaintiff **reported directly to** executives **based in California** and was routinely **required to** travel to Cornerstone's **corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California**.

While traveling to Cornerstone's California headquarters for **work-related meetings**, Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations**. These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson**, conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action**.

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

**Plaintiff Chris Barker** is the husband of Plaintiff Robyn Barker and resides in **Richland County, South Carolina**. He witnessed firsthand the **emotional and familial toll** resulting from Defendants' actions. Mr. Barker asserts **independent claims** for **negligent and/or intentional infliction of emotional distress** and **loss of consortium**, arising from the disruption and harm caused by Defendants' **unlawful conduct**. He has **never been employed** by Cornerstone OnDemand, Inc., and is **not, and has never been, a party** to any agreement with Defendants. Accordingly, he is **not bound by any contractual limitation** that Defendants may attempt to invoke.

**Defendant Cornerstone OnDemand, Inc.** is a **Delaware corporation** with its **principal place of business in Santa Monica, California**. It maintains **centralized authority** over employment matters through its **California-based human resources, compensation, and executive leadership teams**. Key corporate personnel were **directly involved in, or ratified**, the employment decisions at issue, including those that **culminated in Plaintiff's retaliation and termination**.

**Defendant Clearlake Capital Group, L.P.,** a **private equity firm** headquartered in **Santa Monica, California**, is the **majority owner** of Cornerstone OnDemand, Inc. Clearlake **exerts substantial influence** over CSOD's **executive-level hiring, governance, and personnel policy decisions**. Through its **direct and indirect control** of CSOD's leadership and organizational structure, Clearlake is **potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy**. Its **active involvement and oversight failures contributed** to the **hostile and retaliatory environment** that harmed Plaintiff.

**Defendant Michael Pawlyszyn** resides in **Naples, Florida,** and served as the **Chief Revenue Officer** of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had **direct**

supervisory authority over Plaintiff's reporting structure and played a central role in the retaliatory conduct culminating in her termination. He was explicitly notified—well in advance of the final employment decision—that internal efforts to remove Plaintiff were retaliatory in nature. Rather than intervening, Pawlyszyn endorsed and advanced the pretextual narrative, as evidenced by recorded statements and internal communications. His documented awareness, failure to act, and affirmative participation underscore executive-level complicity in the unlawful retaliation.

Defendant Dave Ross resides in Milwaukee, Wisconsin, and served as Group Vice President at Cornerstone OnDemand, Inc. during the relevant period. Ross exhibited persistent bias and retaliatory animus toward Plaintiff after she engaged in protected activity. He openly disparaged her leadership in the presence of subordinates and made demeaning statements that directly undermined her authority and credibility. In internal meetings, Ross advocated for Plaintiff's removal and endorsed a false and pretextual rationale for her termination. His conduct—in concert with other senior executives—was part of a coordinated campaign to punish Plaintiff for exercising her rights under applicable employment laws.

Defendant Carina Cortez resides in Pleasanton, California, and served as Chief People Officer of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had direct authority over human resources operations, ADA compliance, and the handling of internal employee concerns, including those raised by Plaintiff. Despite receiving detailed written and verbal disclosures from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez failed to initiate any remedial measures or corrective investigation. Her inaction permitted the misconduct to escalate, contributing to the retaliatory environment that ultimately resulted in Plaintiff's termination.

Defendant **Jordana Dickinson (Blondin)** resides in **Fruitport, Michigan**. Acting in her capacity as a **Human Resources official**, Dickinson initiated what was labeled as a **"coaching follow-up," but in fact constituted a premeditated and coercive ambush**. The meeting was **deliberately staged under false pretenses** and executed in a **retaliatory manner**. She imposed a so-called **"coaching outcome" based on unsupported or materially mischaracterized allegations**, without conducting any **neutral or documented investigation**. Her actions **violated CSOD's internal procedures** concerning **fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements**. Dickinson's conduct not only **lacked procedural fairness**, but also **breached express company obligations** set forth in the **Dispute Resolution Agreement, Employee Handbook**, and other applicable policies.

Defendant **Sarah Vigil** resides in **Salt Lake City, Utah**, and served as Plaintiff's **assigned Human Resources Partner** at Cornerstone OnDemand, Inc. Vigil received **multiple protected disclosures** from Plaintiff concerning **retaliation, disability accommodation failures, and a pattern of escalating hostility**. In a **recorded conversation dated October 25, 2024**, Vigil **acknowledged the seriousness** of Plaintiff's concerns. Despite this, Vigil **took no meaningful steps** to act, escalate, or intervene. Plaintiff was subjected to an **ambush-style HR interrogation**, directly attributable to Vigil's **inaction**. Her failure to respond left Plaintiff **unprotected and vulnerable to further unlawful treatment**, in violation of **CSOD policy and federal protections**.

Defendant **Stephanie Krotz** resides in **Atlantic Beach, Florida**, and was a **direct subordinate to Plaintiff**. Krotz was a **primary instigator of workplace hostility**. From the outset, Krotz **explicitly declared her intent** to "get [Plaintiff] fired." She repeatedly **undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation**. After

Plaintiff's termination, Krotz **disseminated defamatory and misleading information, damaging Plaintiff's professional reputation** and **violating CSOD's Code of Conduct and anti-retaliation policy**.

**Defendant Jade White (aka Barbara Jade White)** resides in **Santa Monica, California**, and was a **key participant in the hostile work environment** targeting Plaintiff. White **contributed to a toxic and exclusionary team dynamic, echoed threats** made by Krotz, and **undermined Plaintiff's authority** through **passive-aggressive tactics and reputational harm**. Notably, following Plaintiff's termination, White **admitted she was not consulted**, stating, "**This caught me off guard**"—a statement that **undermines the legitimacy of CSOD's justification** for her removal.

**Defendant Himanshu Palsule**, CEO of CSOD, resides in **Irvine, California**, and was **fully aware of the retaliatory motives** underlying Plaintiff's termination. In a **preserved statement**, CRO Michael Pawlyszyn confirmed, "**Himanshu thinks it's BS too**"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously **endorsing Plaintiff's leadership**, Palsule **failed to intervene or take corrective measures**. His silence **constitutes willful neglect** and **executive-level tolerance of retaliation**, directly implicating him in the **company's misconduct**.

**Defendant Edward Kaufman** is **in-house legal counsel** for CSOD, with a work address in **Santa Monica** and residence in **Calabasas, California**. Kaufman was **included on internal legal communications** relating to Plaintiff's employment dispute, indicating his **awareness of the conflict** and **potential exposure to claims** involving **pretext, retaliation, and procedural irregularities**.

**Defendant Paul Huber,** a **managing partner affiliated with CSOD through Clearlake Capital Group,** resides in **Los Angeles, California.** Huber is **believed to have been aware** of the **workplace culture,** the **internal concerns raised by Plaintiff,** and the **pattern of HR retaliation** that followed. Despite his **executive role** and likely access to internal reports, Huber **took no known action** to correct the environment. His **inaction contributed to the governance failures** described in this Complaint.

**Plaintiffs assert claims under:**

- **Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)**

- California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; **Labor Code § 925; wage statutes**

- **South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law**

## II. RIGHT—TO—SUE AUTHORITY

On **March 19, 2025,** after filing a formal administrative complaint with the **California Civil Rights Department** (CRD), Plaintiff Robyn Barker received a **Right—to—Sue Notice** authorizing civil litigation under the **California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq.** (CRD Right-to-Sue Notice, **Exhibit A**)

On **May 8, 2025,** Plaintiff was likewise issued a Right—to—Sue Notice by the **U.S. Equal Employment Opportunity Commission (EEOC),** permitting federal claims under **Title VII of**

the Civil Rights Act of 1964, the **Americans with Disabilities Act (ADA),** and the **Equal Pay Act of 1963.** (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII,** the **ADA,** the **Equal Pay Act,** and the **FMLA:**

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

4. **Disability Discrimination and Failure to Accommodate – ADA**

5. **Unequal Pay Based on Sex – Equal Pay Act**

6. **Hostile Work Environment – Title VII and ADA**

7. **Constructive Discharge – Title VII and ADA**

8. **Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615**

## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to **California—based executives** and participated in work governed by California policy, she asserts claims under the **California Fair Employment and Housing Act, Equal Pay Act**, and related labor statutes:

9. **Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)**

10. **Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)**

11. **Religious Discrimination – FEHA, Gov't Code § 12940(a)**

12. **Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)**

13. **Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5**

14. **Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226**

15. **Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925**

**SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:**

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this **jurisdiction** and caused ongoing harm:

16. **Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80**

17. **Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80**

18. **Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80**

19. **Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110**

20. **Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.**

21. **Wrongful Termination in Violation of Public Policy – South Carolina Common Law**

22. **Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law**

23. **Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law**

24. **Civil Conspiracy – South Carolina Common Law**

25. **Negligent Supervision and Retention – South Carolina Common Law**

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants **intruded into Plaintiff's private affairs** and **portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.**

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;

- Claims based on newly discovered retaliation, defamation, or wage discrepancies;

- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c),** such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress** and a **lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law**, including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission** (EEOC) and the **California Civil Rights Department** (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement**. His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages**, including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest**;

- **Reasonable attorneys' fees and costs**, if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

**Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425,** including appearances for depositions, dispositive motions, or trial. **This does not waive their pro se status unless counsel is formally substituted.**

**Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence** and allowed nearly two months for a voluntary resolution. **Defendants did not acknowledge the legal violations raised or offer to resolve the matter.**

Plaintiffs demand a **trial by jury on all issues so triable**.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:   **Notice to Complainant**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT
A

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Robyn Barker                                              CRD No. 202503-28599619

                                Complainant,

vs.

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

                                Respondents

_____

1. Respondent **Cornerstone OnDemand, Inc** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker**, resides in the City of **Chapin**, State of SC.

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details:** Retaliation for Addressing Misconduct: Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

Hostile Work Environment: The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

Obstruction in Addressing Compensation and Operational Issues: Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

Religious Discrimination: I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

Continuous Anxiety and Fear of Retaliation: From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-
*Complaint – CRD No- 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Robyn Barker,** am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-
*Complaint — CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

**To:** Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

**EEOC Representative and email:**    **GARRETT HOOVER**
CRTIU Supervisor
garrett.hoover@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
05/08/2025

Christine Park-Gonzalez
District Director



EXHIBIT
**B**

Cc:
Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you receive this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now **include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

> **are not considered** in determining if the impairment substantially limits a major life activity.

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robyn Barker

Phone No.:       803-413-9702
Year of Birth:       1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND  INC.

No. Employees, Members: 501+ Employees

Phone No.: (310) 752-1817

Mailing Address: 1601 CLOVERFIELD BLVD STE 600S

SANTA MONICA, CA 90404, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024

Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.

In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)                                                                 Page 1 of 4


EXHIBIT
C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial  it was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay  in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker
05/08/2025

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# CLEARLAKE CAPITAL

# SERVICE DOCUMENTS

SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Barker & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc
Defendant(s)

Submitted By: Robyn Barker
Address: 2195 Harmistead la
Chapin, SC 29036

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No. 2025CP400 3398

SC Bar Number: _____
Telephone #: 803.413.9702
Fax #: _____
Other: _____
Email: rebarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

## DOCKETING INFORMATION (*Check all that apply*)

*If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

**SOUTH CAROLINA JUDICIAL BRANCH**

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #
_____
☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

## STATE OF SOUTH CAROLINA

## COUNTY OF RICHLAND

Robyn Barker and Chris Barker,

Plaintiff,

v.

Cornerstone OnDemand, Inc.; Clearlake
Capital Group, L.P.; Michael Pawlyszyn;
Dave Ross; Carina Cortez; Jordana
Dickinson; Sarah Vigil; Stephanie Krotz;
Jade White; and Himanshu Palsule,

Defendants.

2025CP400**3398**

IN THE COURT OF COMMON PLEAS

CASE NO.: _____

SUMMONS

*JEANETTE W. MCBRIDE C.C.P., G.S., & F.C.*
*2025 MAY 13 PM 3: 16*
*RICHLAND COUNTY FILED*

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Page 1 of 2

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

2025CP4003398

| | |
|---|---|
| Robyn Barker and Chris Barker, | IN THE COURT OF COMMON PLEAS |
| Plaintiff, | |
| | CASE NO.: _____ |
| v. | |
| Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule, | COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED |
| Defendants. | |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination,** and **wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD),** following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.      PARTIES AND JURISDICTION

### A.  DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc.** ("CSOD"), **Clearlake Capital Group, L.P.** ("Clearlake"), and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants**."

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina.** During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity.** Although physically located in South Carolina, Plaintiff **reported directly to** executives based in California and was **routinely required** to travel to Cornerstone's **corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings**, Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson**, conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

Plaintiff **Chris Barker** is the husband of Plaintiff Robyn Barker and resides in **Richland County, South Carolina**. He witnessed firsthand the **emotional and familial toll** resulting from Defendants' actions. Mr. Barker asserts **independent claims** for **negligent and/or intentional infliction of emotional distress and loss of consortium**, arising from the disruption and harm caused by Defendants' **unlawful conduct**. He has **never been employed** by Cornerstone OnDemand, Inc., and is **not, and has never been, a party** to any agreement with Defendants. Accordingly, he is **not bound by any contractual limitation** that Defendants may attempt to invoke.

Defendant **Cornerstone OnDemand, Inc.** is a **Delaware corporation** with its **principal place of business in Santa Monica, California**. It maintains **centralized authority** over employment matters through its **California-based** human resources, compensation, and **executive leadership teams**. Key corporate personnel were **directly involved in, or ratified**, the employment decisions at issue, including those that **culminated in Plaintiff's retaliation and termination**.

Defendant **Clearlake Capital Group, L.P., a private equity firm** headquartered in Santa Monica, California, is the **majority owner** of Cornerstone OnDemand, Inc. Clearlake exerts **substantial influence** over CSOD's **executive-level hiring, governance, and personnel policy decisions**. Through its **direct and indirect control** of CSOD's leadership and organizational structure, Clearlake is **potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy.** Its **active involvement and oversight failures contributed** to the **hostile and retaliatory environment** that harmed Plaintiff.

Defendant **Michael Pawlyszyn** resides in **Naples, Florida**, and served as the **Chief Revenue Officer** of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had **direct**

supervisory **authority** over Plaintiff's reporting structure and played a **central role in the retaliatory conduct** culminating in her termination. He was **explicitly notified**—well in advance of the final employment decision—that **internal efforts to remove Plaintiff were retaliatory in nature**. Rather than intervening, Pawlyszyn **endorsed and advanced the pretextual narrative**, as evidenced by **recorded statements and internal communications**. His documented **awareness, failure to act, and affirmative participation** underscore **executive-level complicity in the unlawful retaliation**.

**Defendant Dave Ross** resides in **Milwaukee, Wisconsin**, and served as **Group Vice President** at Cornerstone OnDemand, Inc. during the relevant period. Ross **exhibited persistent bias and retaliatory animus** toward Plaintiff after she engaged in **protected activity**. He **openly disparaged her leadership** in the presence of subordinates and made **demeaning statements** that directly undermined her authority and credibility. In internal meetings, Ross **advocated for Plaintiff's removal** and endorsed a **false and pretextual rationale** for her termination. His conduct—**in concert with other senior executives**—was part of a **coordinated campaign** to punish Plaintiff for exercising her rights under applicable employment laws.

**Defendant Carina Cortez** resides in **Pleasanton, California**, and served as **Chief People Officer** of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had **direct authority** over human resources operations, **ADA compliance**, and the handling of internal **employee concerns**, including those raised by Plaintiff. Despite receiving **detailed written and verbal disclosures** from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez **failed to initiate any remedial measures or corrective investigation**. Her inaction **permitted the misconduct to escalate**, contributing to the **retaliatory environment** that ultimately resulted in Plaintiff's termination.

Defendant Jordana Dickinson (Blondin) resides in Fruitport, Michigan. Acting in her capacity as a Human Resources official, Dickinson initiated what was labeled as a "coaching follow-up," but in fact constituted a premeditated and coercive ambush. The meeting was deliberately staged under false pretenses and executed in a retaliatory manner. She imposed a so-called "coaching outcome" based on unsupported or materially mischaracterized allegations, without conducting any neutral or documented investigation. Her actions violated CSOD's internal procedures concerning fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements. Dickinson's conduct not only lacked procedural fairness, but also breached express company obligations set forth in the Dispute Resolution Agreement, Employee Handbook, and other applicable policies.

Defendant Sarah Vigil resides in Salt Lake City, Utah, and served as Plaintiff's assigned Human Resources Partner at Cornerstone OnDemand, Inc. Vigil received multiple protected disclosures from Plaintiff concerning retaliation, disability accommodation failures, and a pattern of escalating hostility. In a recorded conversation dated October 25, 2024, Vigil acknowledged the seriousness of Plaintiff's concerns. Despite this, Vigil took no meaningful steps to act, escalate, or intervene. Plaintiff was subjected to an ambush-style HR interrogation, directly attributable to Vigil's inaction. Her failure to respond left Plaintiff unprotected and vulnerable to further unlawful treatment, in violation of CSOD policy and federal protections.

Defendant Stephanie Krotz resides in Atlantic Beach, Florida, and was a direct subordinate to Plaintiff. Krotz was a primary instigator of workplace hostility. From the outset, Krotz explicitly declared her intent to "get [Plaintiff] fired." She repeatedly undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation. After

Page 5 of 15

Plaintiff's termination, Krotz disseminated defamatory and misleading information, damaging Plaintiff's professional reputation and violating CSOD's Code of Conduct and anti-retaliation policy.

Defendant Jade White (aka Barbara Jade White) resides in Santa Monica, California, and was a key participant in the hostile work environment targeting Plaintiff. White contributed to a toxic and exclusionary team dynamic, echoed threats made by Krotz, and undermined Plaintiff's authority through passive-aggressive tactics and reputational harm. Notably, following Plaintiff's termination, White admitted she was not consulted, stating, "This caught me off guard"—a statement that undermines the legitimacy of CSOD's justification for her removal.

Defendant Himanshu Palsule, CEO of CSOD, resides in Irvine, California, and was fully aware of the retaliatory motives underlying Plaintiff's termination. In a preserved statement, CRO Michael Pawlyszyn confirmed, "Himanshu thinks it's BS too"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously endorsing Plaintiff's leadership, Palsule failed to intervene or take corrective measures. His silence constitutes willful neglect and executive-level tolerance of retaliation, directly implicating him in the company's misconduct.

Defendant Edward Kaufman is in-house legal counsel for CSOD, with a work address in Santa Monica and residence in Calabasas, California. Kaufman was included on internal legal communications relating to Plaintiff's employment dispute, indicating his awareness of the conflict and potential exposure to claims involving pretext, retaliation, and procedural irregularities.

Defendant Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group, resides in Los Angeles, California. Huber is believed to have been aware of the workplace culture, the internal concerns raised by Plaintiff, and the pattern of HR retaliation that followed. Despite his executive role and likely access to internal reports, Huber took no known action to correct the environment. His inaction contributed to the governance failures described in this Complaint.

Plaintiffs assert claims under:

- Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)

- California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes

- South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law

## II. RIGHT—TO—SUE AUTHORITY

On March 19, 2025, after filing a formal administrative complaint with the California Civil Rights Department (CRD), Plaintiff Robyn Barker received a Right—to—Sue Notice authorizing civil litigation under the California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq. (CRD Right-to-Sue Notice, Exhibit A)

On May 8, 2025, Plaintiff was likewise issued a Right—to—Sue Notice by the U.S. Equal Employment Opportunity Commission (EEOC), permitting federal claims under Title VII of

the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Equal Pay Act of 1963. (EEOC Dismissal and Notice of Rights, **Exhibit B**).

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**).

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII**, the **ADA**, the **Equal Pay Act**, and the **FMLA**:

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

4. **Disability Discrimination and Failure to Accommodate – ADA**

5. **Unequal Pay Based on Sex – Equal Pay Act**

6. **Hostile Work Environment – Title VII and ADA**

7. **Constructive Discharge – Title VII and ADA**

8. **Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615**

## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to **California—based executives** and participated in work governed by California policy, she asserts claims under the **California Fair Employment and Housing Act, Equal Pay Act**, and related labor statutes:

9. **Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)**

10. **Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)**

11. **Religious Discrimination – FEHA, Gov't Code § 12940(a)**

12. **Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)**

13. **Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5**

14. **Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200– 204, 210, 226**

15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

## SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this jurisdiction and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c)**, such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress and a lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law,** including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission (EEOC)** and the **California Civil Rights Department (CRD).**

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms.** No knowing or voluntary waiver of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement.** His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages,** including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest;**

- **Reasonable attorneys' fees and costs,** if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

Plaintiffs further reserve the right to retain limited—scope representation under **South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425,** including appearances for depositions, dispositive motions, or trial. **This does not waive their pro se status unless counsel is formally substituted.**

Prior to filing, **Plaintiffs presented Defendants with a detailed factual and legal demand** supported by evidence and allowed nearly two months for a voluntary resolution. **Defendants did not acknowledge the legal violations raised or offer to resolve the matter.**

Plaintiffs demand a **trial by jury on all issues so triable**.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:   **Notice to Complainant**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer. You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.**

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT
A

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

March 19, 2025

RE:   **Notice of Filing of Discrimination Complaint**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**GAVIN NEWSOM, GOVERNOR**

**KEVIN KISH, DIRECTOR**

## Civil Rights Department

651 Benton Street, Suite 200 | Sacramento | CA | 65811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:   **Notice of Case Closure and Right to Sue**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of

Robyn Barker

CRD No. 202503-28599619

Complainant,

vs.

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

Respondents

1. Respondent **Cornerstone OnDemand, Inc** is an employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker,** resides in the City of **Chapin**, State of SC.

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details:** Retaliation for Addressing Misconduct: Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

Hostile Work Environment: The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

Obstruction in Addressing Compensation and Operational Issues: Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

Religious Discrimination: I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

Continuous Anxiety and Fear of Retaliation: From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-
*Complaint – CRD No. 202503-28599819*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Robyn Barker**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-
*Complaint – CRD No. 202503-28599819*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

. Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

### DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

**To:** Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

EEOC Representative and email:    GARRETT HOOVER
CRTIU Supervisor
garrett.hoover@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
85/88/2025
Christine Park-Gonzalez
District Director



EXHIBIT
B

Cc:
Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you receive this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now **include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one major life activity need be substantially limited.**

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

are not considered in determining if the impairment substantially limits a major life activity.

☐ An impairment that is "**episodic**" (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

☐ An impairment **may be substantially limiting even though it lasts or is expected to last fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively both transitory (lasting or expected to last six months or less) and minor.

☐ A person is not able to bring a failure to accommodate claim if the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robyn Barker

Phone No.:        803-413-9702
Year of Birth:        1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND INC.
No. Employees, Members: 501+ Employees
Phone No.: (310) 752-1817
Mailing Address: 1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024
Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.
In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)                                                                                          Page 1 of 4



EXHIBIT
C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial it was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this change filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker
05/08/2025

Charging Party Signature & Date

---

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary _____

Printed Name _____

CP ENCLOSURE WITH EEOC FORM 5 (06/24)

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (06/24).

2. AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# MICHAEL PAWLYSZYN

# CARINA CORTEZ

# STEPHANIE KROTZ

# SERVICE DOCUMENT

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS

Case No.: 2025-CP-40-03398

Robyn Barker and Chris Barker,

Plaintiffs,

vs.

Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn, Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Himanshu Palsule; Edward Kaufman; and Paul Huber,

Defendants.

**ACCEPTANCE OF SERVICE**

I, Benjamin P.J. Dudek, Esquire, as duly authorized attorney for Defendants Michael Pawlyszyn, Carina Cortez, and Stephanie Krotz ("Defendants"), hereby acknowledge my receipt and acceptance of service of a copy of Plaintiffs' Summons and Complaint, which was filed on May 13, 2025, on behalf of these Defendants this 10th day of June 2025.

FISHER & PHILLIPS LLP

/s Benjamin P.J. Dudek
Stephen C. Mitchell (SC Bar No. 64285)
smitchell@fisherphillips.com
Benjamin P.J. Dudek (SC Bar No. 102233)
bdudek@fisherphillips.com
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Phone: (803) 255-0000
Fax: (803) 255-0202

**ATTORNEYS FOR DEFENDANTS MICHAEL PAWLYSZYN, CARINA CORTEZ, AND STEPHANIE KROTZ**

# HIMANSHU PALSULE

# SERVICE DOCUMENTS

**SOUTH CAROLINA**
**JUDICIAL BRANCH**

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Barker & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc
Defendant(s)

Submitted By: Robyn Barker
Address: 2195 Harvestwood ln
Chapin, SC 29036

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No. **2025CP400** 3398

SC Bar Number: _____
Telephone #: 803-413-9702
Fax #: _____
Other: _____
Email: rebarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

DOCKETING INFORMATION (*Check all that apply*)

*\*If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #

_____

☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

## STATE OF SOUTH CAROLINA

## COUNTY OF RICHLAND

**2025CP400**3398

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>               Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; and Himanshu Palsule,<br><br>               Defendants. | IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br>SUMMONS |

JEANETTE W. MCBRIDE
C.C.P., G.S., & F.C.
2025 MAY 13 PH 3: 16
RICHLAND COUNTY
FILED

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

## STATE OF SOUTH CAROLINA

## COUNTY OF RICHLAND

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule,<br><br>Defendants. | **2025CP400**3398<br><br>IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br>**COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED** |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination, and wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress and loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD)**, following Plaintiffs' documented reporting and evidence preservation.

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD"), Clearlake Capital Group, L.P. ("Clearlake"),** and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the **"Defendants."**

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina.** During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity.** Although physically located in South Carolina, Plaintiff **reported directly to** executives based in California and was routinely required to travel to Cornerstone's **corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based** personnel under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings,** Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson,** conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

**Plaintiff Chris Barker** is the husband of Plaintiff Robyn Barker and resides in **Richland County, South Carolina**. He witnessed firsthand the **emotional and familial toll** resulting from Defendants' actions. Mr. Barker asserts **independent claims** for **negligent and/or intentional infliction of emotional distress** and **loss of consortium**, arising from the disruption and harm caused by Defendants' **unlawful conduct**. He has **never been employed** by Cornerstone OnDemand, Inc., and is **not, and has never been, a party** to any agreement with Defendants. Accordingly, he is **not bound by any contractual limitation** that Defendants may attempt to invoke.

**Defendant Cornerstone OnDemand, Inc.** is a **Delaware corporation** with its **principal place of business in Santa Monica, California**. It maintains **centralized authority** over employment matters through its California-based human resources, compensation, and **executive leadership teams**. Key corporate personnel were **directly involved in, or ratified,** the employment decisions at issue, including those that **culminated in Plaintiff's retaliation and termination**.

**Defendant Clearlake Capital Group, L.P.,** a **private equity firm** headquartered in **Santa Monica, California,** is the **majority owner** of Cornerstone OnDemand, Inc. Clearlake **exerts substantial influence** over CSOD's **executive-level hiring, governance, and personnel policy decisions**. Through its **direct and indirect control** of CSOD's leadership and organizational structure, Clearlake is **potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy**. Its **active involvement and oversight failures contributed** to the **hostile and retaliatory environment** that harmed Plaintiff.

**Defendant Michael Pawlyszyn** resides in **Naples, Florida,** and served as the **Chief Revenue Officer** of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had **direct**

supervisory authority over Plaintiff's reporting structure and played a **central role in the retaliatory conduct** culminating in her termination. He was **explicitly notified**—well in advance of the final employment decision—that **internal efforts to remove Plaintiff were retaliatory in nature.** Rather than intervening, Pawlyszyn **endorsed and advanced the pretextual narrative,** as evidenced by **recorded statements and internal communications.** His **documented awareness, failure to act, and affirmative participation** underscore **executive-level complicity in the unlawful retaliation.**

**Defendant Dave Ross** resides in **Milwaukee, Wisconsin,** and served as **Group Vice President** at Cornerstone OnDemand, Inc. during the relevant period. Ross **exhibited persistent bias and retaliatory animus** toward Plaintiff after she engaged in **protected activity.** He openly disparaged her leadership in the presence of subordinates and made **demeaning statements** that directly undermined her authority and credibility. In internal meetings, Ross **advocated for Plaintiff's removal** and endorsed a **false and pretextual rationale** for her termination. His conduct—**in concert with other senior executives**—was part of a **coordinated campaign** to punish Plaintiff for exercising her **rights under applicable employment laws.**

**Defendant Carina Cortez** resides in **Pleasanton, California,** and served as **Chief People Officer** of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had **direct authority** over human resources operations, **ADA compliance,** and the handling of **internal employee concerns,** including those raised by Plaintiff. Despite receiving **detailed written and verbal disclosures** from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez **failed to initiate any remedial measures** or **corrective investigation.** Her inaction **permitted the misconduct to escalate,** contributing to the **retaliatory environment** that ultimately resulted in Plaintiff's termination.

Page 4 of 15

**Defendant Jordana Dickinson (Blondin)** resides in **Fruitport, Michigan**. Acting in her capacity as a **Human Resources official**, Dickinson initiated what was labeled as a **"coaching follow-up,"** but in fact constituted a **premeditated and coercive ambush**. The meeting was **deliberately staged under false pretenses** and executed in a **retaliatory manner**. She imposed a so-called **"coaching outcome" based on unsupported or materially mischaracterized allegations**, without conducting any **neutral or documented investigation**. Her actions **violated CSOD's internal procedures** concerning **fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements**. Dickinson's conduct not only **lacked procedural fairness**, but also **breached express company obligations** set forth in the **Dispute Resolution Agreement, Employee Handbook**, and other applicable policies.

**Defendant Sarah Vigil** resides in **Salt Lake City, Utah**, and served as Plaintiff's assigned **Human Resources Partner** at Cornerstone OnDemand, Inc. Vigil received **multiple protected disclosures** from Plaintiff concerning **retaliation, disability accommodation failures, and a pattern of escalating hostility**. In a **recorded conversation dated October 25, 2024**, Vigil **acknowledged the seriousness** of Plaintiff's concerns. Despite this, Vigil **took no meaningful steps** to act, escalate, or intervene. Plaintiff was subjected to an **ambush-style HR interrogation**, directly attributable to Vigil's **inaction**. Her failure to respond left Plaintiff **unprotected and vulnerable to further unlawful treatment**, in violation of **CSOD policy and federal protections**.

**Defendant Stephanie Krotz** resides in **Atlantic Beach, Florida**, and was a direct **subordinate to Plaintiff**. Krotz was a **primary instigator of workplace hostility**. From the outset, Krotz **explicitly declared her intent** to "get [Plaintiff] fired." She repeatedly **undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation**. After

Plaintiff's termination, Krotz **disseminated defamatory and misleading information, damaging Plaintiff's professional reputation** and **violating CSOD's Code of Conduct and anti-retaliation policy.**

**Defendant Jade White (aka Barbara Jade White)** resides in **Santa Monica, California**, and was a **key participant in the hostile work environment** targeting Plaintiff. White **contributed to a toxic and exclusionary team dynamic, echoed threats** made by Krotz, and **undermined Plaintiff's authority** through **passive-aggressive tactics and reputational harm.** Notably, following Plaintiff's termination, White **admitted she was not consulted**, stating, **"This caught me off guard"**—a statement that **undermines the legitimacy of CSOD's justification** for her removal.

**Defendant Himanshu Palsule**, CEO of CSOD, resides in **Irvine, California**, and was **fully aware of the retaliatory motives** underlying Plaintiff's termination. In a **preserved statement**, CRO Michael Pawlyszyn confirmed, **"Himanshu thinks it's BS too"**— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously **endorsing Plaintiff's leadership**, Palsule **failed to intervene or take corrective measures.** His silence **constitutes willful neglect** and **executive-level tolerance of retaliation**, directly implicating him in the **company's misconduct.**

**Defendant Edward Kaufman** is **in-house legal counsel** for CSOD, with a work address in **Santa Monica** and residence in **Calabasas, California.** Kaufman was **included on internal legal communications** relating to Plaintiff's employment dispute, indicating his **awareness of the conflict** and **potential exposure to claims** involving **pretext, retaliation, and procedural irregularities.**

Defendant **Paul Huber**, a managing partner affiliated with CSOD through **Clearlake Capital Group**, resides in **Los Angeles, California.** Huber is **believed to have been aware** of the **workplace culture, the internal concerns raised by Plaintiff,** and the **pattern of HR retaliation** that followed. Despite his **executive role** and likely access to internal reports, Huber **took no known action** to correct the environment. His **inaction contributed to the governance failures** described in this Complaint.

**Plaintiffs assert claims under:**

- **Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)**
- California law: Fair Employment and Housing Act (FEHA); California Equal Pay **Act; Labor Code § 925; wage statutes**
- **South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law**

## II. RIGHT—TO—SUE AUTHORITY

On **March 19, 2025**, after filing a formal administrative complaint with the **California Civil Rights Department** (CRD), Plaintiff Robyn Barker received a **Right—to—Sue Notice** authorizing civil litigation under the **California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq.** (CRD Right-to-Sue Notice, **Exhibit A**)

On **May 8, 2025,** Plaintiff was likewise issued a Right—to—Sue Notice by the **U.S. Equal Employment Opportunity Commission (EEOC),** permitting federal claims under **Title VII of**

the Civil Rights Act of 1964, the **Americans with Disabilities Act (ADA)**, and the **Equal Pay Act of 1963.** (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII**, the **ADA**, the **Equal Pay Act**, and the **FMLA:**

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

4. **Disability Discrimination and Failure to Accommodate – ADA**

5. **Unequal Pay Based on Sex – Equal Pay Act**

6. **Hostile Work Environment – Title VII and ADA**

7. **Constructive Discharge – Title VII and ADA**

8. **Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615**

## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to **California—based executives** and participated in work governed by California policy, she asserts claims under the **California Fair Employment and Housing Act, Equal Pay Act**, and related labor statutes:

9. **Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)**

10. **Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)**

11. **Religious Discrimination – FEHA, Gov't Code § 12940(a)**

12. **Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)**

13. **Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5**

14. **Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226**

15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this jurisdiction and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c),** such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress** and a **lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at-—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law**, including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission** (EEOC) and the **California Civil Rights Department** (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement.** His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages**, including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest**;

- **Reasonable attorneys' fees and costs**, if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

**Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425,** including appearances for depositions, dispositive motions, or trial. **This does not waive their pro se status unless counsel is formally substituted.**

**Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence** and allowed nearly two months for a voluntary resolution. **Defendants did not acknowledge the legal violations raised or offer to resolve the matter.**

Plaintiffs demand **a trial by jury on all issues so triable**.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    **Notice to Complainant**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

Pursuant to Government Code section 12962, CRD will not serve these documents on the employer. You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT
A

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

RE:   **Notice of Filing of Discrimination Complaint**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202503-28599619
       Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Robyn Barker                                          CRD No. 202503-28599619

                              Complainant,

vs.

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

                              Respondents

---

1. Respondent **Cornerstone OnDemand, Inc** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker**, resides in the City of **Chapin**, State of SC.

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

Complainant was harassed because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

Complainant was discriminated against because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

Complainant experienced retaliation because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details:** Retaliation for Addressing Misconduct: Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

Hostile Work Environment: The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

Obstruction in Addressing Compensation and Operational Issues: Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

Religious Discrimination: I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

Continuous Anxiety and Fear of Retaliation: From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-
Complaint – CRD No. 202503-28599619

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Robyn Barker**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-
*Complaint – CRD No. 202503-28599819*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

To: Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

EEOC Representative and email:     **GARRETT HOOVER**
CRTIU Supervisor
garrett.hoover@eeoc.gov

---

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
05/08/2025
Christine Park-Gonzalez
District Director



EXHIBIT **B**

Cc:
Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you receive this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

To make a FOIA request for your charge file, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file,** submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

**are not considered** in determining if the impairment substantially limits a major life activity.

☐ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

☐ An impairment **may be substantially limiting even though it lasts or is expected to last fewer than six months.**

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

☐ A person is not able to bring a failure to accommodate claim if the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robyn Barker

Phone No.:      803-413-9702
Year of Birth:     1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND INC.

No. Employees, Members: 501+ Employees

Phone No.: (310) 752-1817

Mailing Address: 1601 CLOVERFIELD BLVD STE 600S

SANTA MONICA, CA 90404, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024
Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.

In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)                                                  Page 1 of 4



EXHIBIT C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial  it was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay  in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker

05/08/2025
_____

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (06/24).

2. AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EDWARD KAUFMAN

# SERVICE DOCUMENTS

SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Backer & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc.
Defendant(s)

Submitted By: Robyn Backer
Address: 2195 Harvestwood ln
Chapin, SC 29036

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No. 2025CP400 3398

SC Bar Number: _____
Telephone #: 803. 413. 9702
Fax #: _____
Other: _____
Email: cebacker1 @ hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**DOCKETING INFORMATION (*Check all that apply*)**

***If Action is Judgment/Settlement do not complete***

☑ **JURY TRIAL** demanded in complaint.

☐ **NON-JURY TRIAL** demanded in complaint.

☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #

_____

☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

## STATE OF SOUTH CAROLINA

## COUNTY OF RICHLAND

**2025CP400**3398

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>                                    Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; and Himanshu Palsule,<br><br>                                    Defendants. | **IN THE COURT OF COMMON PLEAS**<br><br>CASE NO.: _____<br><br>**SUMMONS** |

JEANETTE W. McBRIDE
C.C.P., C.S., & G.C.
2025 MAY 13  PM 3: 16
RICHLAND COUNTY
FILED

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Page 1 of 2

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>                                   Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule,<br><br>                                    Defendants. | **2025CP4003398**<br><br>IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br>**COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED** |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination,** and **wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD),** following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD"), Clearlake Capital Group, L.P. ("Clearlake"),** and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants.**"

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina.** During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity.** Although physically located in South Carolina, Plaintiff **reported directly to executives based in California** and was routinely required to travel to Cornerstone's **corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings**, Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson**, conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

**Plaintiff Chris Barker** is the husband of Plaintiff Robyn Barker and resides in **Richland County, South Carolina**. He witnessed firsthand the **emotional and familial toll** resulting from Defendants' actions. Mr. Barker asserts **independent claims** for **negligent and/or intentional infliction of emotional distress** and **loss of consortium**, arising from the disruption and harm caused by Defendants' **unlawful conduct**. He has **never been employed** by Cornerstone OnDemand, Inc., and is **not, and has never been, a party** to any agreement with Defendants. Accordingly, he is **not bound by any contractual limitation** that Defendants may attempt to invoke.

**Defendant Cornerstone OnDemand, Inc.** is a **Delaware corporation** with its **principal place of business in Santa Monica, California**. It maintains **centralized authority** over employment matters through its **California-based human resources, compensation, and executive leadership teams**. Key corporate personnel were **directly involved in, or ratified**, the employment decisions at issue, including those that **culminated in Plaintiff's retaliation and termination**.

**Defendant Clearlake Capital Group, L.P.**, a **private equity firm** headquartered in **Santa Monica, California**, is the **majority owner** of Cornerstone OnDemand, Inc. Clearlake **exerts substantial influence** over CSOD's **executive-level hiring, governance, and personnel policy decisions**. Through its **direct and indirect control** of CSOD's leadership and organizational structure, Clearlake is **potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy**. Its **active involvement and oversight failures** contributed to the **hostile and retaliatory environment** that harmed Plaintiff.

**Defendant Michael Pawlyszyn** resides in **Naples, Florida**, and served as the **Chief Revenue Officer** of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had **direct**

Page 3 of 15

**supervisory authority** over Plaintiff's reporting structure and played a **central role in the retaliatory conduct** culminating in her termination. He was **explicitly notified**—well in advance of the final employment decision—that **internal efforts to remove Plaintiff were retaliatory in nature.** Rather than intervening, Pawlyszyn **endorsed and advanced the pretextual narrative,** as evidenced by **recorded statements and internal communications.** His **documented awareness, failure to act, and affirmative participation** underscore **executive-level complicity in the unlawful retaliation.**

Defendant **Dave Ross** resides in **Milwaukee, Wisconsin,** and served as **Group Vice President** at Cornerstone OnDemand, Inc. during the relevant period. Ross **exhibited persistent bias and retaliatory animus** toward Plaintiff after she engaged in **protected activity.** He **openly disparaged her leadership** in the presence of subordinates and made **demeaning statements** that directly undermined her authority and credibility. In internal meetings, Ross **advocated for Plaintiff's removal** and endorsed a **false and pretextual rationale** for her termination. His conduct—**in concert with other senior executives**—was part of a **coordinated campaign** to punish Plaintiff for exercising her **rights under applicable employment laws.**

Defendant **Carina Cortez** resides in **Pleasanton, California,** and served as **Chief People Officer** of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had **direct authority** over human resources operations, **ADA compliance,** and the handling of **internal employee concerns,** including those raised by Plaintiff. Despite receiving **detailed written and verbal disclosures** from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez **failed to initiate any remedial measures** or **corrective investigation.** Her inaction **permitted the misconduct to escalate,** contributing to the **retaliatory environment** that ultimately resulted in Plaintiff's termination.

Page 4 of 15

Defendant **Jordana Dickinson (Blondin)** resides in **Fruitport, Michigan**. Acting in her capacity as a **Human Resources official**, Dickinson initiated what was labeled as a **"coaching follow-up,"** but in fact constituted a **premeditated and coercive ambush**. The meeting was **deliberately staged under false pretenses** and executed in a **retaliatory manner**. She imposed a so-called **"coaching outcome"** based on **unsupported or materially mischaracterized allegations**, without conducting any **neutral or documented investigation**. Her actions **violated CSOD's internal procedures** concerning **fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements**. Dickinson's conduct not only **lacked procedural fairness**, but also **breached express company obligations** set forth in the **Dispute Resolution Agreement, Employee Handbook**, and other applicable policies.

Defendant **Sarah Vigil** resides in **Salt Lake City, Utah**, and served as Plaintiff's **assigned Human Resources Partner** at Cornerstone OnDemand, Inc. Vigil received **multiple protected disclosures** from Plaintiff concerning **retaliation, disability accommodation failures, and a pattern of escalating hostility**. In a **recorded conversation dated October 25, 2024**, Vigil **acknowledged the seriousness** of Plaintiff's concerns. Despite this, Vigil took **no meaningful steps** to act, escalate, or intervene. Plaintiff was subjected to an **ambush-style HR interrogation**, directly attributable to Vigil's **inaction**. Her failure to respond left Plaintiff **unprotected and vulnerable to further unlawful treatment**, in violation of **CSOD policy and federal protections**.

Defendant **Stephanie Krotz** resides in **Atlantic Beach, Florida**, and was a **direct subordinate to Plaintiff**. Krotz was a **primary instigator of workplace hostility**. From the outset, Krotz **explicitly declared her intent** to "get [Plaintiff] fired." She repeatedly **undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation**. After

Plaintiff's termination, Krotz **disseminated defamatory and misleading information, damaging Plaintiff's professional reputation** and **violating CSOD's Code of Conduct and anti-retaliation policy**.

**Defendant Jade White (aka Barbara Jade White)** resides in **Santa Monica, California**, and was a **key participant in the hostile work environment** targeting Plaintiff. White **contributed to a toxic and exclusionary team dynamic, echoed threats** made by Krotz, and **undermined Plaintiff's authority** through **passive-aggressive tactics and reputational harm**. Notably, following Plaintiff's termination, White **admitted she was not consulted**, stating, "**This caught me off guard**"—a statement that **undermines the legitimacy of CSOD's justification** for her removal.

**Defendant Himanshu Palsule**, CEO of CSOD, resides in **Irvine, California**, and was **fully aware of the retaliatory motives** underlying Plaintiff's termination. In a **preserved statement**, CRO Michael Pawlyszyn confirmed, "**Himanshu thinks it's BS too**"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously **endorsing Plaintiff's leadership**, Palsule **failed to intervene or take corrective measures**. His silence **constitutes willful neglect** and **executive-level tolerance of retaliation**, directly implicating him in the **company's misconduct**.

**Defendant Edward Kaufman** is **in-house legal counsel** for CSOD, with a work address in **Santa Monica** and residence in **Calabasas, California**. Kaufman was **included on internal legal communications** relating to Plaintiff's employment dispute, indicating his **awareness of the conflict** and **potential exposure to claims** involving **pretext, retaliation, and procedural irregularities**.

Defendant **Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group,** resides in **Los Angeles, California.** Huber is **believed to have been aware** of the **workplace culture, the internal concerns raised by Plaintiff,** and the **pattern of HR retaliation** that followed. Despite his **executive role** and likely access to internal reports, Huber **took no known action** to correct the environment. His **inaction contributed to the governance failures** described in this Complaint.

**Plaintiffs assert claims under:**

- **Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)**
- **California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes**
- **South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law**

## II. RIGHT—TO—SUE AUTHORITY

On **March 19, 2025,** after filing a formal administrative complaint with the **California Civil Rights Department** (CRD), Plaintiff Robyn Barker received a **Right—to—Sue Notice** authorizing civil litigation under the **California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq.** (CRD Right-to-Sue Notice, **Exhibit A**)

On **May 8, 2025,** Plaintiff was likewise issued a Right—to—Sue Notice by the **U.S. Equal Employment Opportunity Commission (EEOC),** permitting federal claims under **Title VII of**

the **Civil Rights Act of 1964**, the **Americans with Disabilities Act (ADA)**, and the **Equal Pay Act of 1963.** (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

### III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

### FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII**, the **ADA**, the **Equal Pay Act**, and the **FMLA**:

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

Page 8 of 15

4. **Disability Discrimination and Failure to Accommodate – ADA**

5. **Unequal Pay Based on Sex – Equal Pay Act**

6. **Hostile Work Environment – Title VII and ADA**

7. **Constructive Discharge – Title VII and ADA**

8. **Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615**


## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to **California—based executives** and participated in work governed by California policy, she asserts claims under the **California Fair Employment and Housing Act, Equal Pay Act**, and related labor statutes:

9. **Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)**

10. **Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)**

11. **Religious Discrimination – FEHA, Gov't Code § 12940(a)**

12. **Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)**

13. **Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5**

14. **Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200– 204, 210, 226**

15. **Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925**

## SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this **jurisdiction** and caused ongoing harm:

16. **Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80**

17. **Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80**

18. **Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80**

19. **Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110**

20. **Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.**

21. **Wrongful Termination in Violation of Public Policy – South Carolina Common Law**

22. **Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law**

23. **Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law**

24. **Civil Conspiracy – South Carolina Common Law**

25. **Negligent Supervision and Retention – South Carolina Common Law**

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law. Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.**

## RESERVATION OF ADDITIONAL CLAIMS:

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c),** such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress and a lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law**, including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission** (EEOC) and the **California Civil Rights Department** (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement**. His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages,** including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest;**

- **Reasonable attorneys' fees and costs,** if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

**Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425,** including appearances for depositions, dispositive motions, or trial. **This does not waive their pro se status unless counsel is formally substituted.**

**Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence** and allowed nearly two months for a voluntary resolution. **Defendants did not acknowledge the legal violations raised or offer to resolve the matter.**

Plaintiffs demand a **trial by jury on all issues so triable.**

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:  **Notice to Complainant**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT

**A**

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

## Civil Rights Department

631 Bascon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calchrights.ca.gov | contact.center@calchrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

RE:  **Notice of Filing of Discrimination Complaint**
     CRD Matter Number: 202503-28599619
     Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:     **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Robyn Barker                                                    CRD No. 202503-28599619

Complainant,

vs.

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

Respondents

_____

1. Respondent **Cornerstone OnDemand, Inc** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker**, resides in the City of **Chapin**, State of **SC.**

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details:** Retaliation for Addressing Misconduct: Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

Hostile Work Environment: The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

Obstruction in Addressing Compensation and Operational Issues: Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

Religious Discrimination: I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

Continuous Anxiety and Fear of Retaliation: From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Robyn Barker,** am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-

*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

**To:** Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

EEOC Representative and email:    **GARRETT HOOVER**
CRTIU Supervisor
garrett.hoover@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
05/08/2025

Christine Park-Gonzalez
District Director



EXHIBIT
**B**

Cc:
Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court within 90 days of the date you receive this Notice. Receipt generally means the date when you (or your representative) opened this email or mail. You should keep a record of the date you received this notice. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

To make a FOIA request for your charge file, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

    are not considered in determining if the impairment substantially limits a major life activity.

- An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.

- An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

### "Regarded as" coverage

An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively both transitory (lasting or expected to last six months or less) and minor.

- A person is not able to bring a failure to accommodate claim if the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robyn Barker

Phone No.:     803-413-9702
Year of Birth:     1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND  INC.

No. Employees, Members: 501+ Employees

Phone No.: (310) 752-1817

Mailing Address: 1601 CLOVERFIELD BLVD STE 600S

SANTA MONICA, CA 90404, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024
Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.

In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)                                                                Page 1 of 4

EXHIBIT C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial. It was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker
05/08/2025
Changing Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____
Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93–579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e–5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff–6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg–2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# JADE WHITE

# SERVICE DOCUMENTS

SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Barker & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc
Defendant(s)

Submitted By: Robyn Barker
Address: 2195 Harvestwood Ln
Chapin, SC 29036

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No **2025CP400** 3398

SC Bar Number: _____
Telephone #: 803 413 9702
Fax #: _____
Other: _____
Email: ccbarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

DOCKETING INFORMATION (*Check all that apply*)

*If Action is Judgment/Settlement do not complete*

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #

_____

☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

Robyn Barker and Chris Barker,

Plaintiff,

v.

Cornerstone OnDemand, Inc.; Clearlake
Capital Group, L.P.; Michael Pawlyszyn;
Dave Ross; Carina Cortez; Jordana
Dickinson; Sarah Vigil; Stephanie Krotz;
Jade White; and Himanshu Palsule,

Defendants.

2025CP400 3398

IN THE COURT OF COMMON PLEAS

CASE NO.: _____

SUMMONS

JEANETTE W. McBRIDE
C.C.R., C.S., & F.C.

2025 MAY 13 PH 3: 16

RICHLAND COUNTY
FILED

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a

copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint

upon the undersigned at the address provided below, within thirty (30) days after service of this

Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint

within that time, judgment by default will be rendered against you for the relief demanded in the

Complaint.

Page 1 of 2

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule,<br><br>Defendants. | **2025CP400**3398<br><br>IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br>COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination,** and **wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD),** following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD"), Clearlake Capital Group, L.P. ("Clearlake"),** and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants**."

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina.** During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity.** Although physically located in South Carolina, Plaintiff **reported directly to executives based in California** and was **routinely required to travel to Cornerstone's corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings,** Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson,** conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

Plaintiff Chris Barker is the husband of Plaintiff Robyn Barker and resides in Richland County, South Carolina. He witnessed firsthand the emotional and familial toll resulting from Defendants' actions. Mr. Barker asserts independent claims for negligent and/or intentional infliction of emotional distress and loss of consortium, arising from the disruption and harm caused by Defendants' unlawful conduct. He has never been employed by Cornerstone OnDemand, Inc., and is not, and has never been, a party to any agreement with Defendants. Accordingly, he is not bound by any contractual limitation that Defendants may attempt to invoke.

Defendant Cornerstone OnDemand, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California. It maintains centralized authority over employment matters through its California-based human resources, compensation, and executive leadership teams. Key corporate personnel were directly involved in, or ratified, the employment decisions at issue, including those that culminated in Plaintiff's retaliation and termination.

Defendant Clearlake Capital Group, L.P., a private equity firm headquartered in Santa Monica, California, is the majority owner of Cornerstone OnDemand, Inc. Clearlake exerts substantial influence over CSOD's executive-level hiring, governance, and personnel policy decisions. Through its direct and indirect control of CSOD's leadership and organizational structure, Clearlake is potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy. Its active involvement and oversight failures contributed to the hostile and retaliatory environment that harmed Plaintiff.

Defendant Michael Pawlyszyn resides in Naples, Florida, and served as the Chief Revenue Officer of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had direct

supervisory authority over Plaintiff's reporting structure and played a central role in the retaliatory conduct culminating in her termination. He was explicitly notified—well in advance of the final employment decision—that internal efforts to remove Plaintiff were retaliatory in nature. Rather than intervening, Pawlyszyn endorsed and advanced the pretextual narrative, as evidenced by recorded statements and internal communications. His documented awareness, failure to act, and affirmative participation underscore executive-level complicity in the unlawful retaliation.

Defendant Dave Ross resides in Milwaukee, Wisconsin, and served as Group Vice President at Cornerstone OnDemand, Inc. during the relevant period. Ross exhibited persistent bias and retaliatory animus toward Plaintiff after she engaged in protected activity. He openly disparaged her leadership in the presence of subordinates and made demeaning statements that directly undermined her authority and credibility. In internal meetings, Ross advocated for Plaintiff's removal and endorsed a false and pretextual rationale for her termination. His conduct—in concert with other senior executives—was part of a coordinated campaign to punish Plaintiff for exercising her rights under applicable employment laws.

Defendant Carina Cortez resides in Pleasanton, California, and served as Chief People Officer of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had direct authority over human resources operations, ADA compliance, and the handling of internal employee concerns, including those raised by Plaintiff. Despite receiving detailed written and verbal disclosures from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez failed to initiate any remedial measures or corrective investigation. Her inaction permitted the misconduct to escalate, contributing to the retaliatory environment that ultimately resulted in Plaintiff's termination.

Defendant Jordana Dickinson (Blondin) resides in Fruitport, Michigan. Acting in her capacity as a Human Resources official, Dickinson initiated what was labeled as a "coaching follow-up," but in fact constituted a premeditated and coercive ambush. The meeting was deliberately staged under false pretenses and executed in a retaliatory manner. She imposed a so-called "coaching outcome" based on unsupported or materially mischaracterized allegations, without conducting any neutral or documented investigation. Her actions violated CSOD's internal procedures concerning fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements. Dickinson's conduct not only lacked procedural fairness, but also breached express company obligations set forth in the Dispute Resolution Agreement, Employee Handbook, and other applicable policies.

Defendant Sarah Vigil resides in Salt Lake City, Utah, and served as Plaintiff's assigned Human Resources Partner at Cornerstone OnDemand, Inc. Vigil received multiple protected disclosures from Plaintiff concerning retaliation, disability accommodation failures, and a pattern of escalating hostility. In a recorded conversation dated October 25, 2024, Vigil acknowledged the seriousness of Plaintiff's concerns. Despite this, Vigil took no meaningful steps to act, escalate, or intervene. Plaintiff was subjected to an ambush-style HR interrogation, directly attributable to Vigil's inaction. Her failure to respond left Plaintiff unprotected and vulnerable to further unlawful treatment, in violation of CSOD policy and federal protections.

Defendant Stephanie Krotz resides in Atlantic Beach, Florida, and was a direct subordinate to Plaintiff. Krotz was a primary instigator of workplace hostility. From the outset, Krotz explicitly declared her intent to "get [Plaintiff] fired." She repeatedly undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation. After

Plaintiff's termination, Krotz disseminated defamatory and misleading information, damaging Plaintiff's professional reputation and violating CSOD's Code of Conduct and anti-retaliation policy.

Defendant Jade White (aka Barbara Jade White) resides in Santa Monica, California, and was a key participant in the hostile work environment targeting Plaintiff. White contributed to a toxic and exclusionary team dynamic, echoed threats made by Krotz, and undermined Plaintiff's authority through passive-aggressive tactics and reputational harm. Notably, following Plaintiff's termination, White admitted she was not consulted, stating, "This caught me off guard"—a statement that undermines the legitimacy of CSOD's justification for her removal.

Defendant Himanshu Palsule, CEO of CSOD, resides in Irvine, California, and was fully aware of the retaliatory motives underlying Plaintiff's termination. In a preserved statement, CRO Michael Pawlyszyn confirmed, "Himanshu thinks it's BS too"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously endorsing Plaintiff's leadership, Palsule failed to intervene or take corrective measures. His silence constitutes willful neglect and executive-level tolerance of retaliation, directly implicating him in the company's misconduct.

Defendant Edward Kaufman is in-house legal counsel for CSOD, with a work address in Santa Monica and residence in Calabasas, California. Kaufman was included on internal legal communications relating to Plaintiff's employment dispute, indicating his awareness of the conflict and potential exposure to claims involving pretext, retaliation, and procedural irregularities.

Defendant Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group, resides in Los Angeles, California. Huber is believed to have been aware of the workplace culture, the internal concerns raised by Plaintiff, and the pattern of HR retaliation that followed. Despite his executive role and likely access to internal reports, Huber took no known action to correct the environment. His inaction contributed to the governance failures described in this Complaint.

Plaintiffs assert claims under:

- **Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)**

- **California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes**

- **South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law**

## II. RIGHT—TO—SUE AUTHORITY

On **March 19, 2025**, after filing a formal administrative complaint with the **California Civil Rights Department** (CRD), Plaintiff Robyn Barker received a **Right—to—Sue Notice** authorizing civil litigation under the **California Fair Employment and Housing Act (FEHA), California Government Code § 12900** et seq. (CRD Right-to-Sue Notice, **Exhibit A**)

On **May 8, 2025**, Plaintiff was likewise issued a Right—to—Sue Notice by the **U.S. Equal Employment Opportunity Commission (EEOC)**, permitting federal claims under Title VII of

the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Equal Pay Act of 1963. (EEOC Dismissal and Notice of Rights, Exhibit B) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, Exhibit C) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under Title VII, the ADA, the Equal Pay Act, and the FMLA:

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

4. **Disability Discrimination and Failure to Accommodate – ADA**

5. Unequal Pay Based on Sex – Equal Pay Act

6. Hostile Work Environment – Title VII and ADA

7. Constructive Discharge – Title VII and ADA

8. Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615

## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to **California—based executives** and participated in work governed by California policy, she asserts claims under the **California Fair Employment and Housing Act, Equal Pay Act**, and related labor statutes:

9. **Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)**

10. **Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)**

11. Religious Discrimination – FEHA, Gov't Code § 12940(a)

12. Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)

13. Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5

14. Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226

15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this jurisdiction and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c),** such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress** and **a lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected "**coaching outcome**" based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law**, including authorizations to proceed issued by the U.S. **Equal Employment Opportunity Commission** (EEOC) and the **California Civil Rights Department** (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement.** His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages,** including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest;**

- **Reasonable attorneys' fees and costs,** if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425, including appearances for depositions, dispositive motions, or trial. This does not waive their pro se status unless counsel is formally substituted.

Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence and allowed nearly two months for a voluntary resolution. Defendants did not acknowledge the legal violations raised or offer to resolve the matter.

Plaintiffs demand a **trial by jury on all issues so triable.**

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:     **Notice to Complainant**
        CRD Matter Number: 202503-28599619
        Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT

A

CRD - ENF 80 RS (Revised 2025/02)

Enclosure with EEOC Notice of Closure and Rights (01/22)

are not considered in determining if the impairment substantially limits a major life activity.

☐ An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.

☐ An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

### "Regarded as" coverage

An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively both transitory (lasting or expected to last six months or less) and minor.

☐ A person is not able to bring a failure to accommodate claim if the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robyn Barker

Phone No.:          803-413-9702
Year of Birth:     1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND INC.
No. Employees, Members: 501+ Employees
Phone No.: (310) 752-1817
Mailing Address: 1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024
Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.

In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)                                                   Page 1 of 4



EXHIBIT
C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial. It was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker
05/08/2025
_____
Charging Party Signature & Date

_____

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____
Printed Name _____

EEOC Form 5 (06/24)

Page 3 of 4

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you** or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# DAVE ROSS

# SERVICE DOCUMENTS

SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

Robyn Barker & Chris Barker
Plaintiff(s)

v.

Cornerstone OnDemand, Inc
Defendant(s)

Submitted By: Robyn Barker
Address: 2195 Harvestwood Ln
Chapin, SC 29036

IN THE COURT OF COMMON PLEAS

Civil Action Coversheet

Case No. **2025CP400** 3398

SC Bar Number: _____
Telephone #: 803-413-9702
Fax #: _____
Other: _____
Email: rebarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**DOCKETING INFORMATION (*Check all that apply*)**

***If Action is Judgment/Settlement do not complete***

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)

SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #
_____
☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (620)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)

# STATE OF SOUTH CAROLINA

## COUNTY OF RICHLAND

| | |
|---|---|
| Robyn Barker and Chris Barker,<br><br>              Plaintiff,<br><br>v.<br><br>Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; and Himanshu Palsule,<br><br>              Defendants. | **2025CP400**3398<br><br>IN THE COURT OF COMMON PLEAS<br><br>CASE NO.: _____<br><br>**SUMMONS** |

*Stamp: JEANETTE W. McBRIDE C.C.P., G.S., & F.C. · 2025 MAY 13 PM 3:16 · RICHLAND COUNTY FILED*

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Page 1 of 2

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

**STATE OF SOUTH CAROLINA**

**COUNTY OF RICHLAND**

| | |
|---|---|
| Robyn Barker and Chris Barker, | **2025CP4003398** |
| Plaintiff, | IN THE COURT OF COMMON PLEAS |
| v. | CASE NO.: _____ |
| Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule, | **COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination,** and **wage violations** under **federal, California, and South Carolina law.** Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD),** following Plaintiffs' documented reporting and evidence preservation.

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD"), Clearlake Capital Group, L.P. ("Clearlake"),** and the **individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants**."

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina**. During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity**. Although physically located in South Carolina, Plaintiff **reported directly to** executives based in California and was routinely required to travel to Cornerstone's **corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings**, Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by **Jordana Dickinson,** conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.

**Plaintiff Chris Barker** is the husband of Plaintiff Robyn Barker and resides in **Richland County, South Carolina**. He witnessed firsthand the **emotional and familial toll** resulting from Defendants' actions. Mr. Barker asserts **independent claims** for **negligent and/or intentional infliction of emotional distress** and **loss of consortium**, arising from the disruption and harm caused by Defendants' **unlawful conduct**. He has **never been employed** by Cornerstone OnDemand, Inc., and is **not, and has never been, a party** to any agreement with Defendants. Accordingly, he is **not bound by any contractual limitation** that Defendants may attempt to invoke.

**Defendant Cornerstone OnDemand, Inc.** is a **Delaware corporation** with its **principal place of business in Santa Monica, California**. It maintains **centralized authority** over employment matters through its **California-based human resources, compensation, and executive leadership teams**. Key corporate personnel were **directly involved in, or ratified,** the employment decisions at issue, including those that **culminated in Plaintiff's retaliation and termination**.

**Defendant Clearlake Capital Group, L.P.,** a private equity firm headquartered in **Santa Monica, California,** is the **majority owner** of Cornerstone OnDemand, Inc. Clearlake **exerts substantial influence** over CSOD's **executive-level hiring, governance, and personnel policy decisions**. Through its **direct and indirect control** of CSOD's leadership and organizational structure, Clearlake is **potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy**. Its **active involvement and oversight failures contributed** to the **hostile and retaliatory environment** that harmed Plaintiff.

**Defendant Michael Pawlyszyn** resides in **Naples, Florida,** and served as the **Chief Revenue Officer** of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had **direct**

supervisory authority over Plaintiff's reporting structure and played a central role in the retaliatory conduct culminating in her termination. He was explicitly notified—well in advance of the final employment decision—that internal efforts to remove Plaintiff were retaliatory in nature. Rather than intervening, Pawlyszyn endorsed and advanced the pretextual narrative, as evidenced by recorded statements and internal communications. His documented awareness, failure to act, and affirmative participation underscore executive-level complicity in the unlawful retaliation.

Defendant Dave Ross resides in Milwaukee, Wisconsin, and served as Group Vice President at Cornerstone OnDemand, Inc. during the relevant period. Ross exhibited persistent bias and retaliatory animus toward Plaintiff after she engaged in protected activity. He openly disparaged her leadership in the presence of subordinates and made demeaning statements that directly undermined her authority and credibility. In internal meetings, Ross advocated for Plaintiff's removal and endorsed a false and pretextual rationale for her termination. His conduct—in concert with other senior executives—was part of a coordinated campaign to punish Plaintiff for exercising her rights under applicable employment laws.

Defendant Carina Cortez resides in Pleasanton, California, and served as Chief People Officer of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had direct authority over human resources operations, ADA compliance, and the handling of internal employee concerns, including those raised by Plaintiff. Despite receiving detailed written and verbal disclosures from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez failed to initiate any remedial measures or corrective investigation. Her inaction permitted the misconduct to escalate, contributing to the retaliatory environment that ultimately resulted in Plaintiff's termination.

Defendant Jordana Dickinson (Blondin) resides in **Fruitport, Michigan**. Acting in her capacity as a **Human Resources official**, Dickinson initiated what was labeled as a **"coaching follow-up,"** but in fact constituted a premeditated and coercive ambush. The meeting was deliberately staged under false pretenses and executed in a retaliatory manner. She imposed a so-called **"coaching outcome"** based on unsupported or materially mischaracterized allegations, without conducting any neutral or documented investigation. Her actions violated CSOD's internal procedures concerning fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements. Dickinson's conduct not only lacked procedural fairness, but also breached express company obligations set forth in the Dispute Resolution Agreement, Employee Handbook, and other applicable policies.

Defendant Sarah Vigil resides in **Salt Lake City, Utah**, and served as Plaintiff's assigned **Human Resources Partner** at Cornerstone OnDemand, Inc. Vigil received **multiple protected disclosures** from Plaintiff concerning **retaliation, disability accommodation failures, and a pattern of escalating hostility**. In a **recorded conversation dated October 25, 2024**, Vigil acknowledged the seriousness of Plaintiff's concerns. Despite this, Vigil **took no meaningful steps** to act, escalate, or intervene. Plaintiff was subjected to an **ambush-style HR interrogation**, directly attributable to Vigil's **inaction**. Her failure to respond left Plaintiff **unprotected and vulnerable to further unlawful treatment**, in violation of **CSOD policy and federal protections**.

Defendant Stephanie Krotz resides in **Atlantic Beach, Florida**, and was a direct **subordinate to Plaintiff**. Krotz was a **primary instigator of workplace hostility**. From the outset, Krotz **explicitly declared her intent** to "get [Plaintiff] fired." She repeatedly **undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation**. After

Plaintiff's termination, Krotz disseminated defamatory and misleading information, damaging Plaintiff's professional reputation and violating CSOD's Code of Conduct and anti-retaliation policy.

Defendant Jade White (aka Barbara Jade White) resides in Santa Monica, California, and was a key participant in the hostile work environment targeting Plaintiff. White contributed to a toxic and exclusionary team dynamic, echoed threats made by Krotz, and undermined Plaintiff's authority through passive-aggressive tactics and reputational harm. Notably, following Plaintiff's termination, White admitted she was not consulted, stating, "This caught me off guard"—a statement that undermines the legitimacy of CSOD's justification for her removal.

Defendant Himanshu Palsule, CEO of CSOD, resides in Irvine, California, and was fully aware of the retaliatory motives underlying Plaintiff's termination. In a preserved statement, CRO Michael Pawlyszyn confirmed, "Himanshu thinks it's BS too"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously endorsing Plaintiff's leadership, Palsule failed to intervene or take corrective measures. His silence constitutes willful neglect and executive-level tolerance of retaliation, directly implicating him in the company's misconduct.

Defendant Edward Kaufman is in-house legal counsel for CSOD, with a work address in Santa Monica and residence in Calabasas, California. Kaufman was included on internal legal communications relating to Plaintiff's employment dispute, indicating his awareness of the conflict and potential exposure to claims involving pretext, retaliation, and procedural irregularities.

Defendant Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group, resides in Los Angeles, California. Huber is believed to have been aware of the workplace culture, the internal concerns raised by Plaintiff, and the pattern of HR retaliation that followed. Despite his executive role and likely access to internal reports, Huber took no known action to correct the environment. His inaction contributed to the governance failures described in this Complaint.

Plaintiffs assert claims under:

- **Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)**

- California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes

- **South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law**

## II. RIGHT—TO—SUE AUTHORITY

On March 19, 2025, after filing a formal administrative complaint with the California Civil Rights Department (CRD), Plaintiff Robyn Barker received a Right—to—Sue Notice authorizing civil litigation under the California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq. (CRD Right-to-Sue Notice, Exhibit A)

On May 8, 2025, Plaintiff was likewise issued a Right—to—Sue Notice by the U.S. Equal Employment Opportunity Commission (EEOC), permitting federal claims under Title VII of

the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Equal Pay Act of 1963. (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII**, the **ADA**, the **Equal Pay Act**, and the **FMLA**:

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

4. Disability Discrimination and Failure to Accommodate – ADA

5. Unequal Pay Based on Sex – Equal Pay Act

6. Hostile Work Environment – Title VII and ADA

7. Constructive Discharge – Title VII and ADA

8. Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615

## CALIFORNIA STATUTORY CLAIMS:

Because Plaintiff was supervised by and reported to California—based executives and participated in work governed by California policy, she asserts claims under the California Fair Employment and Housing Act, Equal Pay Act, and related labor statutes:

9. Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)

10. Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)

11. Religious Discrimination – FEHA, Gov't Code § 12940(a)

12. Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)

13. Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5

14. Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226

15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

## SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this jurisdiction and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

## RESERVATION OF ADDITIONAL CLAIMS:

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;

- Claims based on newly discovered retaliation, defamation, or wage discrepancies;

- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c),** such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress and a lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked to** its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law**, including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission** (EEOC) and the **California Civil Rights Department** (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement.** His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

- **Compensatory damages,** including lost wages, lost benefits, and unpaid commissions;

- **Emotional distress damages** and damages for reputational harm;

- **Loss of consortium** on behalf of Co—Plaintiff Chris Barker;

- **Back pay and front pay** as appropriate under applicable statutes;

- **Liquidated damages and statutory penalties** pursuant to federal and state employment laws;

- **Punitive damages** for willful, malicious, or reckless violations of law;

- **Pre—judgment and post—judgment interest;**

- **Reasonable attorneys' fees and costs,** if counsel is retained pursuant to statute or contract;

- **Declaratory or injunctive relief** as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- **Such other and further relief as this Court deems just and proper.**

**Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425,** including appearances for depositions, dispositive motions, or trial. **This does not waive their pro se status unless counsel is formally substituted.**

**Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence** and allowed nearly two months for a voluntary resolution. **Defendants did not acknowledge the legal violations raised or offer to resolve the matter.**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    **Notice to Complainant**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

Pursuant to Government Code section 12962, CRD will not serve these documents on the employer. You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT
A

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

RE:   **Notice of Filing of Discrimination Complaint**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:     **Notice of Case Closure and Right to Sue**
        CRD Matter Number: 202503-28599619
        Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of
Robyn Barker

CRD No. 202503-28599619

Complainant,

vs.

Comerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

Respondents

1. Respondent **Comerstone OnDemand, Inc is an employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker**, resides in the City of **Chapin**, State of SC.

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details: Retaliation for Addressing Misconduct:** Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

**Hostile Work Environment:** The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

**Obstruction in Addressing Compensation and Operational Issues:** Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

**Religious Discrimination:** I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

**Continuous Anxiety and Fear of Retaliation:** From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

*Complaint – CRD No. 202503-28599619*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Robyn Barker,** am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-
*Complaint – CRD No. 202503-28599819*

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

To: Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

EEOC Representative and email:    GARRETT HOOVER
CRTIU Supervisor
garrett.hoover@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
05/08/2025

Christine Park-Gonzalez
District Director



EXHIBIT

B

Cc:
Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court within 90 days of the date you receive this Notice. Receipt generally means the date when you (or your representative) opened this email or mail. You should keep a record of the date you received this notice. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

To make a FOIA request for your charge file, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now **include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one major life activity need be substantially limited.**

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

are not considered in determining if the impairment substantially limits a major life activity.

☐ An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.

☐ An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

"Regarded as" coverage

An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively both transitory (lasting or expected to last six months or less) and minor.

☐ A person is not able to bring a failure to accommodate claim if the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

EEOC No. 480-2025-02958 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 480-2025-02958 |

Name (indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.): Robyn Barker

Phone No.:       803-413-9702
Year of Birth:    1982
Mailing Address: 2195 Harvestwood Ln
CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND INC.

No. Employees, Members: 501+ Employees

Phone No.: (310) 752-1817

Mailing Address: 1601 CLOVERFIELD BLVD STE 600S

SANTA MONICA, CA 90404, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Equal Pay, Religion, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 08/01/2024
Latest: 03/11/2025

THE PARTICULARS ARE:

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team. Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.

In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls, which infringed on my religious expression and contributed to a hostile and discriminatory environment.

EEOC Form 5 (06/24)

Page 1 of 4



EXHIBIT
C

EEOC No. 480-2025-02958 | FEPA No.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial it was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker
05/08/2025

Charging Party Signature & Date

---

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary _____

Printed Name _____

**CP ENCLOSURE WITH EEOC FORM 5 (06/24)**

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93–579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# JORDANA DICKINSON

# SERVICE DOCUMENTS



SOUTH CAROLINA
JUDICIAL BRANCH

STATE OF SOUTH CAROLINA
COUNTY OF _____

IN THE COURT OF COMMON PLEAS

Robyn Becker & Chris Becker
Plaintiff(s)

Civil Action Coversheet

v.

Cornerstone OnDemand, Inc
Defendant(s)

Case No. 2025CP400 3398

Submitted By: Robyn Becker
Address: 2195 Harvestwood lr
Chapin, SC 29036

SC Bar Number: _____
Telephone #: 803 413 9202
Fax #: _____
Other: _____
Email: rebecker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. This form is NOT required to be filed in E-Filed Cases.

DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete

☑ JURY TRIAL demanded in complaint.
☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)



SOUTH CAROLINA
— JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☐Breach of Contract (140)
☐Fraud/Bad Faith (150)
☐Failure to Deliver (160)
☐Employment Discrim (170)
☐Employment (180)
☐Other (199)

### Torts- Professional Malpractice
☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)
☐Notice of Intent Case #
_____
☐Other (299)

### Torts- Personal Injury
☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

### Inmate Petitions
☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

### Real Property
☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possessions (450)
☐Building Code Violation (460)
☐Other (499)

### Judgments/Settlements
☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Transcript Judgment (730)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

### Administrative Law/Relief
☐Reinstate Driver's License (800)
☐Judicial Review (810)
☐Relief (820)
☐Permanent Injunction (830)
☐Forfeiture- Petition (840)
☐Forfeiture- Consent Order (850)
☐Other (899)

### Special/Complex/Other
☐Environmental (600)
☐Automobile Arb. (610)
☐Medical (620)
☐Pharmaceuticals (630)
☐Unfair Trade Practices (640)
☐Out of State Depositions (650)
☐Motion to Quash Subpoena in an Out of County Action (660)
☐Pre-Suit Discovery (670)
☐Permanent Restraining Order (680)
☐Interpleader (690)
☒Other (699)

### Appeals
Arbitration (900)
☐Magistrate- Civil (910)
☐Magistrate- Criminal (920)
☐Municipal (930)
☐Probate Court (940)
☐SCDOT (950)
☐Worker's Comp (960)
☐Zoning Board (970)
☐Public Service Comm. (990)
☐Employment Service Comm. (991)
☐Other (999)

SCCA 234 (Revised 11/2024)



STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

Robyn Barker and Chris Barker,

                                Plaintiff,

v.

Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; and Himanshu Palsule,

                                Defendants.

**2025CP400 3398**

IN THE COURT OF COMMON PLEAS

CASE NO.: _____

SUMMONS

JEANETTE W. McBRIDE
C.C.P., C.S., & E.C.
2025 MAY 13 PM 3: 16
RICHLAND COUNTY FILED

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned at the address provided below, within thirty (30) days after service of this Summons upon you, exclusive of the day of such service. If you fail to answer the Complaint within that time, judgment by default will be rendered against you for the relief demanded in the Complaint.

Page 1 of 2



Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.

Page 2 of 2



STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

| | |
|---|---|
| Robyn Barker and Chris Barker, | **2025CP400**3398 |
| Plaintiff, | IN THE COURT OF COMMON PLEAS |
| v. | CASE NO.: _____ |
| Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule, | **COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination, and wage violations** under federal, California, and South Carolina law. Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress** and **loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD)**, following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.    PARTIES AND JURISDICTION

### A.  DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc.** ("CSOD"), **Clearlake Capital Group, L.P.** ("Clearlake"), and the individual officers and personnel named in the caption. Collectively, these parties are referred to throughout this Complaint as the "**Defendants**."

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina**. During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity**. Although physically located in South Carolina, Plaintiff **reported directly to executives based in California** and was **routinely required to travel to Cornerstone's corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the laws of the State of California.

While traveling to Cornerstone's California headquarters for **work-related meetings**, Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations**. These events were later used to justify an **ambush-style HR interrogation** by Jordana Dickinson, conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action**.

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions** were initiated.



Plaintiff Chris Barker is the husband of Plaintiff Robyn Barker and resides in Richland County, South Carolina. He witnessed firsthand the emotional and familial toll resulting from Defendants' actions. Mr. Barker asserts independent claims for negligent and/or intentional infliction of emotional distress and loss of consortium, arising from the disruption and harm caused by Defendants' unlawful conduct. He has never been employed by Cornerstone OnDemand, Inc., and is not, and has never been, a party to any agreement with Defendants. Accordingly, he is not bound by any contractual limitation that Defendants may attempt to invoke.

Defendant Cornerstone OnDemand, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California. It maintains centralized authority over employment matters through its California-based human resources, compensation, and executive leadership teams. Key corporate personnel were directly involved in, or ratified, the employment decisions at issue, including those that culminated in Plaintiff's retaliation and termination.

Defendant Clearlake Capital Group, L.P., a private equity firm headquartered in Santa Monica, California, is the majority owner of Cornerstone OnDemand, Inc. Clearlake exerts substantial influence over CSOD's executive-level hiring, governance, and personnel policy decisions. Through its direct and indirect control of CSOD's leadership and organizational structure, Clearlake is potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy. Its active involvement and oversight failures contributed to the hostile and retaliatory environment that harmed Plaintiff.

Defendant Michael Pawlyszyn resides in Naples, Florida, and served as the Chief Revenue Officer of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had direct

Page 3 of 35

supervisory authority over Plaintiff's reporting structure and played a central role in the retaliatory conduct culminating in her termination. He was explicitly notified—well in advance of the final employment decision—that internal efforts to remove Plaintiff were retaliatory in nature. Rather than intervening, Pawlyszyn endorsed and advanced the pretextual narrative, as evidenced by recorded statements and internal communications. His documented awareness, failure to act, and affirmative participation underscore executive-level complicity in the unlawful retaliation.

Defendant Dave Ross resides in Milwaukee, Wisconsin, and served as Group Vice President at Cornerstone OnDemand, Inc. during the relevant period. Ross exhibited persistent bias and retaliatory animus toward Plaintiff after she engaged in protected activity. He openly disparaged her leadership in the presence of subordinates and made demeaning statements that directly undermined her authority and credibility. In internal meetings, Ross advocated for Plaintiff's removal and endorsed a false and pretextual rationale for her termination. His conduct—in concert with other senior executives—was part of a coordinated campaign to punish Plaintiff for exercising her rights under applicable employment laws.

Defendant Carina Cortez resides in Pleasanton, California, and served as Chief People Officer of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had direct authority over human resources operations, ADA compliance, and the handling of internal employee concerns, including those raised by Plaintiff. Despite receiving detailed written and verbal disclosures from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez failed to initiate any remedial measures or corrective investigation. Her inaction permitted the misconduct to escalate, contributing to the retaliatory environment that ultimately resulted in Plaintiff's termination.

Page 4 of 15

Defendant Jordana Dickinson (Blondin) resides in Fruitport, Michigan. Acting in her capacity as a Human Resources official, Dickinson initiated what was labeled as a "coaching follow-up," but in fact constituted a premeditated and coercive ambush. The meeting was deliberately staged under false pretenses and executed in a retaliatory manner. She imposed a so-called "coaching outcome" based on unsupported or materially mischaracterized allegations, without conducting any neutral or documented investigation. Her actions violated CSOD's internal procedures concerning fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements. Dickinson's conduct not only lacked procedural fairness, but also breached express company obligations set forth in the Dispute Resolution Agreement, Employee Handbook, and other applicable policies.

Defendant Sarah Vigil resides in Salt Lake City, Utah, and served as Plaintiff's assigned Human Resources Partner at Cornerstone OnDemand, Inc. Vigil received multiple protected disclosures from Plaintiff concerning retaliation, disability accommodation failures, and a pattern of escalating hostility. In a recorded conversation dated October 25, 2024, Vigil acknowledged the seriousness of Plaintiff's concerns. Despite this, Vigil took no meaningful steps to act, escalate, or intervene. Plaintiff was subjected to an ambush-style HR interrogation, directly attributable to Vigil's inaction. Her failure to respond left Plaintiff unprotected and vulnerable to further unlawful treatment, in violation of CSOD policy and federal protections.

Defendant Stephanie Krotz resides in Atlantic Beach, Florida, and was a direct subordinate to Plaintiff. Krotz was a primary instigator of workplace hostility. From the outset, Krotz explicitly declared her intent to "get [Plaintiff] fired." She repeatedly undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation. After

Page 5 of 15



Plaintiff's termination, Krotz disseminated defamatory and misleading information, damaging Plaintiff's professional reputation and violating CSOD's Code of Conduct and anti-retaliation policy.

Defendant Jade White (aka Barbara Jade White) resides in Santa Monica, California, and was a key participant in the hostile work environment targeting Plaintiff. White contributed to a toxic and exclusionary team dynamic, echoed threats made by Krotz, and undermined Plaintiff's authority through passive-aggressive tactics and reputational harm. Notably, following Plaintiff's termination, White admitted she was not consulted, stating, "This caught me off guard"—a statement that undermines the legitimacy of CSOD's justification for her removal.

Defendant Himanshu Palsule, CEO of CSOD, resides in Irvine, California, and was fully aware of the retaliatory motives underlying Plaintiff's termination. In a preserved statement, CRO Michael Pawlyszyn confirmed, "Himanshu thinks it's BS too"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously endorsing Plaintiff's leadership, Palsule failed to intervene or take corrective measures. His silence constitutes willful neglect and executive-level tolerance of retaliation, directly implicating him in the company's misconduct.

Defendant Edward Kaufman is in-house legal counsel for CSOD, with a work address in Santa Monica and residence in Calabasas, California. Kaufman was included on internal legal communications relating to Plaintiff's employment dispute, indicating his awareness of the conflict and potential exposure to claims involving pretext, retaliation, and procedural irregularities.

Page 6 of 15

Defendant Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group, resides in Los Angeles, California. Huber is believed to have been aware of the workplace culture, the internal concerns raised by Plaintiff, and the pattern of HR retaliation that followed. Despite his executive role and likely access to internal reports, Huber took no known action to correct the environment. His inaction contributed to the governance failures described in this Complaint.

Plaintiffs assert claims under:

- Federal law: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)
- California law: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes
- South Carolina law: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law

## II. RIGHT—TO—SUE AUTHORITY

On March 19, 2025, after filing a formal administrative complaint with the California Civil Rights Department (CRD), Plaintiff Robyn Barker received a Right—to—Sue Notice authorizing civil litigation under the California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq. (CRD Right-to-Sue Notice, Exhibit A)

On May 8, 2025, Plaintiff was likewise issued a Right—to—Sue Notice by the U.S. Equal Employment Opportunity Commission (EEOC), permitting federal claims under Title VII of



the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Equal Pay Act of 1963. (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under Title VII, the ADA, the Equal Pay Act, and the FMLA:

1. Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963

2. Sex Discrimination – Title VII

3. Religious Discrimination – Title VII

Page 8 of 15



4. Disability Discrimination and Failure to Accommodate – ADA

5. Unequal Pay Based on Sex – Equal Pay Act

6. Hostile Work Environment – Title VII and ADA

7. Constructive Discharge – Title VII and ADA

8. Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615

**CALIFORNIA STATUTORY CLAIMS:**

Because Plaintiff was supervised by and reported to California—based executives and participated in work governed by California policy, she asserts claims under the California Fair Employment and Housing Act, Equal Pay Act, and related labor statutes:

9. Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)

10. Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)

11. Religious Discrimination – FEHA, Gov't Code § 12940(a)

12. Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)

13. Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5

14. Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226

Page 9 of 15



15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

**SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:**

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this jurisdiction and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

Page 10 of 15



26. Aiding and Abetting Torts – South Carolina Common Law

27. Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law. Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery. This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c)**, such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

Page 11 of 15



## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress** and a **lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected "**coaching outcome**" based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff was leaked to its subject, **Stephanie Krotz**—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

Page 12 of 15



claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than 900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination. These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on statutory rights granted under federal and California law, including authorizations to proceed issued by the U.S. Equal Employment Opportunity Commission (EEOC) and the California Civil Rights Department (CRD).

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is not bound by any agreement. His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

Page 13 of 15



- Compensatory damages, including lost wages, lost benefits, and unpaid commissions;

- Emotional distress damages and damages for reputational harm;

- Loss of consortium on behalf of Co—Plaintiff Chris Barker;

- Back pay and front pay as appropriate under applicable statutes;

- Liquidated damages and statutory penalties pursuant to federal and state employment laws;

- Punitive damages for willful, malicious, or reckless violations of law;

- Pre—judgment and post—judgment interest;

- Reasonable attorneys' fees and costs, if counsel is retained pursuant to statute or contract;

- Declaratory or injunctive relief as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;

- Such other and further relief as this Court deems just and proper.

Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425, including appearances for depositions, dispositive motions, or trial. This does not waive their pro se status unless counsel is formally substituted.

Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence and allowed nearly two months for a voluntary resolution. Defendants did not acknowledge the legal violations raised or offer to resolve the matter.

Page 14 of 15



Plaintiffs demand a **trial by jury on all issues so triable.**

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff

respectfully requests redaction of identifying information if the motion is granted.

Page 15 of 15



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (Voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    Notice to Complainant
       CRD Matter Number: 202503-28599619
       Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

EXHIBIT
A

CRD - TNF SC RS (Revised 2025/02)



**Civil Rights Department**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202503-28599619
       Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 202502)



Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    Notice of Case Closure and Right to Sue
       CRD Matter Number: 202503-28599619
       Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of
Robyn Barker

                                              CRD No. 202503-28599619

vs.                          Complainant,

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

                          Respondents

1. Respondent Cornerstone OnDemand, Inc is an employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant Robyn Barker, resides in the City of Chapin, State of SC.

3. Complainant alleges that on or about March 11, 2025, respondent took the following adverse actions:

Complainant was harassed because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

Complainant was discriminated against because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

Complainant experienced retaliation because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
Complaint – CRD No. 202503-28599619

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details: Retaliation for Addressing Misconduct:** Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

Hostile Work Environment: The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

Obstruction in Addressing Compensation and Operational Issues: Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

Religious Discrimination: I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

Continuous Anxiety and Fear of Retaliation: From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-

Complaint– CRD No. 202503-28509619

Date Filed: March 19, 2025

CRD-ENF 80 R8 (Revised 2025X3)



VERIFICATION

I, **Robyn Barker**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Chapin SC

Complaint – CRD No. 202503-28596619

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

# SARAH VIGIL

# SERVICE DOCUMENTS

Date 6/4/25 Time 1940
Served
By: _____
Process Server/Private Investigator
Bringhurst Process Service 801-561-4278
60 E Claybourne Ave Salt Lake City

**SOUTH CAROLINA**
**JUDICIAL BRANCH**

STATE OF SOUTH CAROLINA
COUNTY OF _____

**IN THE COURT OF COMMON PLEAS**

Civil Action Coversheet

Robyn Barker + Chris Barker
Plaintiff(s)

v.

Case No. **2025CP400**3398

Cornerstone OnDemand, Inc
Defendant(s)

Submitted By: Robyn Barker
Address: 2195 Harvestwood Ln
Chapin, SC 29036

SC Bar Number: _____
Telephone #: 803-413-9702
Fax #: _____
Other: _____
Email: ccbarker1@hotmail.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the
filing and service of pleadings or other papers as required by law. This form is required for the
use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be
filled out completely, signed, and dated. A copy of this coversheet must be served on the
defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed**
in E-Filed Cases.

**DOCKETING INFORMATION (Check all that apply)**

***If Action is Judgment/Settlement do not complete**

☑ **JURY TRIAL** demanded in complaint.
☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute
   Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute
   Resolution Rules.
☐ This case is exempt from ADR. (Certificate Attached)

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule
11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann.
§15-36-10 et. seq.

Submitting Party Signature: _____
Date: 5/13/25

SCCA 234 (Revised 11/2024)



SOUTH CAROLINA
JUDICIAL BRANCH

## Nature of Action (Check one box below)

### Contracts
☐ Constructions (100)
☐ Debt Collection (110)
☐ General (130)
☐ Breach of Contract (140)
☐ Fraud/Bad Faith (150)
☐ Failure to Deliver (160)
☐ Employment Discrim (170)
☐ Employment (180)
☐ Other (199)

### Torts- Professional Malpractice
☐ Dental Malpractice (200)
☐ Legal Malpractice (210)
☐ Medical Malpractice (220)
☐ Notice of Intent Case #
_____
☐ Other (299)

### Torts- Personal Injury
☐ Conversion (310)
☐ Motor Vehicle Accident (320)
☐ Premises Liability (330)
☐ Products Liability (340)
☐ Personal Injury (350)
☐ Wrongful Death (360)
☐ Assault/Battery (370)
☐ Slander/Libel (380)
☐ Other (399)

### Inmate Petitions
☐ PCR (500)
☐ Mandamus (520)
☐ Habeas Corpus (530)
☐ Other (599)

### Real Property
☐ Claim & Delivery (400)
☐ Condemnation (410)
☐ Foreclosure (420)
☐ Mechanic's Lien (430)
☐ Partition (440)
☐ Possessions (450)
☐ Building Code Violation (460)
☐ Other (499)

### Judgments/Settlements
☐ Death Settlement (700)
☐ Foreign Judgment (710)
☐ Magistrate's Judgment (720)
☐ Transcript Judgment (730)
☐ Lis Pendens (750)
☐ Transfer of Structured Settlement Application Payment Rights (760)
☐ Confession of Judgment (770)
☐ Petition for Workers Compensation Settlement Approval (780)
☐ Incapacitated Adult Settlement (790)
☐ Other (799)

### Administrative Law/Relief
☐ Reinstate Driver's License (800)
☐ Judicial Review (810)
☐ Relief (820)
☐ Permanent Injunction (830)
☐ Forfeiture- Petition (840)
☐ Forfeiture- Consent Order (850)
☐ Other (899)

### Special/Complex/Other
☐ Environmental (600)
☐ Automobile Arb. (610)
☐ Medical (620)
☐ Pharmaceuticals (630)
☐ Unfair Trade Practices (640)
☐ Out of State Depositions (650)
☐ Motion to Quash Subpoena in an Out of County Action (660)
☐ Pre-Suit Discovery (670)
☐ Permanent Restraining Order (680)
☐ Interpleader (690)
☒ Other (699)

### Appeals
Arbitration (900)
☐ Magistrate- Civil (910)
☐ Magistrate- Criminal (620)
☐ Municipal (930)
☐ Probate Court (940)
☐ SCDOT (950)
☐ Worker's Comp (960)
☐ Zoning Board (970)
☐ Public Service Comm. (990)
☐ Employment Service Comm. (991)
☐ Other (999)

SCCA 234 (Revised 11/2024)

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

**2025CP400**3398

Robyn Barker and Chris Barker,

Plaintiff,

v.

Cornerstone OnDemand, Inc.; Clearlake Capital Group, L.P.; Michael Pawlyszyn; Dave Ross; Carina Cortez; Jordana Dickinson; Sarah Vigil; Stephanie Krotz; Jade White; Ed Kaufman and Himanshu Palsule,

Defendants.

IN THE COURT OF COMMON PLEAS

CASE NO.: _____

COMPLAINT – COMBINED FEDERAL AND STATE CLAIMS JURY TRIAL DEMANDED

2025 MAY 13 PM 3: 16

RICHLAND COUNTY FILED

COMES NOW Plaintiffs Robyn Barker and Chris Barker—appearing pro se—bring this civil action to address unlawful conduct that has caused serious professional and personal harm. Plaintiff Robyn Barker asserts claims based on **employment discrimination, retaliation, wrongful termination, and wage violations** under federal, California, and South Carolina law. Plaintiff Chris Barker, her spouse, brings separate but related claims for **emotional distress and loss of consortium** resulting from the events at issue. This case is supported by administrative **Right-to-Sue Notices** issued by the **United States EEOC** and the **California Civil Rights Department (CRD)**, following Plaintiffs' documented reporting and evidence preservation.

Page 1 of 15

## I.    PARTIES AND JURISDICTION

### A. DEFENDANTS AND REFERENCES IN THIS COMPLAINT

For clarity and ease of reference, the **Defendants** are introduced by full name and title in the paragraphs below. Thereafter, they are referred to by last name only. These Defendants include **Cornerstone OnDemand, Inc. ("CSOD"), Clearlake Capital Group, L.P. ("Clearlake"), and the individual officers and personnel** named in the caption. Collectively, these parties are referred to throughout this Complaint as the **"Defendants."**

**Plaintiff Robyn Barker** is an individual residing in **Richland County, South Carolina.** During all relevant times, Plaintiff was employed by Defendant Cornerstone OnDemand, Inc. in a **remote capacity.** Although physically located in South Carolina, Plaintiff **reported directly to executives based in California** and was **routinely required to travel to Cornerstone's corporate headquarters in Santa Monica, California** for leadership meetings, personnel oversight, and internal human resources matters. **Material employment decisions**—including those related to **adverse actions, retaliation, and termination**—were made by **California-based personnel** under policies and procedures governed by the **laws of the State of California.**

While traveling to Cornerstone's California headquarters for **work-related meetings,** Plaintiff Robyn Barker experienced **direct targeting and retaliatory conduct** that gave rise to **fabricated allegations.** These events were later used to justify an **ambush-style HR interrogation** by Jordana Dickinson, conducted after Plaintiff returned to her home office in South Carolina. That intervention and its aftermath form a **critical part of the factual basis for this action.**

At least one **retaliatory act** occurred during Plaintiff's travel to California, and **multiple decision-makers** were located in California at the time **adverse employment actions were** initiated.

Plaintiff Chris Barker is the husband of Plaintiff Robyn Barker and resides in Richland County, South Carolina. He witnessed firsthand the emotional and familial toll resulting from Defendants' actions. Mr. Barker asserts independent claims for negligent and/or intentional infliction of emotional distress and loss of consortium, arising from the disruption and harm caused by Defendants' unlawful conduct. He has never been employed by Cornerstone OnDemand, Inc., and is not, and has never been, a party to any agreement with Defendants. Accordingly, he is not bound by any contractual limitation that Defendants may attempt to invoke.

Defendant Cornerstone OnDemand, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California. It maintains centralized authority over employment matters through its California-based human resources, compensation, and executive leadership teams. Key corporate personnel were directly involved in, or ratified, the employment decisions at issue, including those that culminated in Plaintiff's retaliation and termination.

Defendant Clearlake Capital Group, L.P., a private equity firm headquartered in Santa Monica, California, is the majority owner of Cornerstone OnDemand, Inc. Clearlake exerts substantial influence over CSOD's executive-level hiring, governance, and personnel policy decisions. Through its direct and indirect control of CSOD's leadership and organizational structure, Clearlake is potentially liable under theories of vicarious liability, negligent supervision, and civil conspiracy. Its active involvement and oversight failures contributed to the hostile and retaliatory environment that harmed Plaintiff.

Defendant Michael Pawlyszyn resides in Naples, Florida, and served as the Chief Revenue Officer of Cornerstone OnDemand, Inc. during the events at issue. Pawlyszyn had direct

Page 3 of 15

supervisory authority over Plaintiff's reporting structure and played a central role in the retaliatory conduct culminating in her termination. He was explicitly notified—well in advance of the final employment decision—that internal efforts to remove Plaintiff were retaliatory in nature. Rather than intervening, Pawlyszyn endorsed and advanced the pretextual narrative, as evidenced by recorded statements and internal communications. His documented awareness, failure to act, and affirmative participation underscore executive-level complicity in the unlawful retaliation.

Defendant Dave Ross resides in Milwaukee, Wisconsin, and served as Group Vice President at Cornerstone OnDemand, Inc. during the relevant period. Ross exhibited persistent bias and retaliatory animus toward Plaintiff after she engaged in protected activity. He openly disparaged her leadership in the presence of subordinates and made demeaning statements that directly undermined her authority and credibility. In internal meetings, Ross advocated for Plaintiff's removal and endorsed a false and pretextual rationale for her termination. His conduct—in concert with other senior executives—was part of a coordinated campaign to punish Plaintiff for exercising her rights under applicable employment laws.

Defendant Carina Cortez resides in Pleasanton, California, and served as Chief People Officer of Cornerstone OnDemand, Inc. during the events described. In this role, Cortez had direct authority over human resources operations, ADA compliance, and the handling of internal employee concerns, including those raised by Plaintiff. Despite receiving detailed written and verbal disclosures from Plaintiff while present at CSOD's Santa Monica headquarters, Cortez failed to initiate any remedial measures or corrective investigation. Her inaction permitted the misconduct to escalate, contributing to the retaliatory environment that ultimately resulted in Plaintiff's termination.

Page 4 of 15

Defendant Jordana Dickinson (Blondin) resides in Fruitport, Michigan. Acting in her capacity as a Human Resources official, Dickinson initiated what was labeled as a "coaching follow-up," but in fact constituted a premeditated and coercive ambush. The meeting was deliberately staged under false pretenses and executed in a retaliatory manner. She imposed a so-called "coaching outcome" based on unsupported or materially mischaracterized allegations, without conducting any neutral or documented investigation. Her actions violated CSOD's internal procedures concerning fair investigations, confidentiality, anti-retaliation protections, and disability accommodation requirements. Dickinson's conduct not only lacked procedural fairness, but also breached express company obligations set forth in the Dispute Resolution Agreement, Employee Handbook, and other applicable policies.

Defendant Sarah Vigil resides in Salt Lake City, Utah, and served as Plaintiff's assigned Human Resources Partner at Cornerstone OnDemand, Inc. Vigil received multiple protected disclosures from Plaintiff concerning retaliation, disability accommodation failures, and a pattern of escalating hostility. In a recorded conversation dated October 25, 2024, Vigil acknowledged the seriousness of Plaintiff's concerns. Despite this, Vigil took no meaningful steps to act, escalate, or intervene. Plaintiff was subjected to an ambush-style HR interrogation, directly attributable to Vigil's inaction. Her failure to respond left Plaintiff unprotected and vulnerable to further unlawful treatment, in violation of CSOD policy and federal protections.

Defendant Stephanie Krotz resides in Atlantic Beach, Florida, and was a direct subordinate to Plaintiff. Krotz was a primary instigator of workplace hostility. From the outset, Krotz explicitly declared her intent to "get [Plaintiff] fired." She repeatedly undermined Plaintiff's authority through triangulation, misrepresentation, and internal escalation. After

Page 5 of 15

Plaintiff's termination, Krotz disseminated defamatory and misleading information, damaging Plaintiff's professional reputation and violating CSOD's Code of Conduct and anti-retaliation policy.

Defendant Jade White (aka Barbara Jade White) resides in Santa Monica, California, and was a key participant in the hostile work environment targeting Plaintiff. White contributed to a toxic and exclusionary team dynamic, echoed threats made by Krotz, and undermined Plaintiff's authority through passive-aggressive tactics and reputational harm. Notably, following Plaintiff's termination, White admitted she was not consulted, stating, "This caught me off guard"—a statement that undermines the legitimacy of CSOD's justification for her removal.

Defendant Himanshu Palsule, CEO of CSOD, resides in Irvine, California, and was fully aware of the retaliatory motives underlying Plaintiff's termination. In a preserved statement, CRO Michael Pawlyszyn confirmed, "Himanshu thinks it's BS too"— a reference to the fabricated justification later used to effectuate Plaintiff's dismissal. Despite previously endorsing Plaintiff's leadership, Palsule failed to intervene or take corrective measures. His silence constitutes willful neglect and executive-level tolerance of retaliation, directly implicating him in the company's misconduct.

Defendant Edward Kaufman is in-house legal counsel for CSOD, with a work address in Santa Monica and residence in Calabasas, California. Kaufman was included on internal legal communications relating to Plaintiff's employment dispute, indicating his awareness of the conflict and potential exposure to claims involving pretext, retaliation, and procedural irregularities.

4.  Disability Discrimination and Failure to Accommodate – ADA

5.  Unequal Pay Based on Sex – Equal Pay Act

6.  Hostile Work Environment – Title VII and ADA

7.  Constructive Discharge – Title VII and ADA

8.  Family and Medical Leave Act (FMLA) Interference and Retaliation—29 U.S.C. § 2615

**CALIFORNIA STATUTORY CLAIMS:**

Because Plaintiff was supervised by and reported to California—based executives and participated in work governed by California policy, she asserts claims under the California Fair Employment and Housing Act, Equal Pay Act, and related labor statutes:

9.  Retaliation—California Fair Employment and Housing Act (FEHA), Government Code § 12940(h)

10. Disability Discrimination and Failure to Accommodate—FEHA, Government Code §§ 12940(a), (m), (n)

11. Religious Discrimination – FEHA, Gov't Code § 12940(a)

12. Failure to Prevent Retaliation and Harassment – FEHA, Gov't Code § 12940(k)

13. Unequal Pay Based on Sex and/or Protected Status—California Equal Pay Act, Labor Code § 1197.5

14. Wage Theft / Failure to Pay Earned Wages—California Labor Code §§ 200–204, 210, 226

Defendant Paul Huber, a managing partner affiliated with CSOD through Clearlake Capital Group, resides in Los Angeles, California. Huber is believed to have been aware of the **workplace culture**, the **internal concerns raised by Plaintiff**, and the **pattern of HR retaliation** that followed. Despite his **executive role** and likely access to internal reports, Huber took no **known action** to correct the environment. His **inaction contributed to the governance failures** described in this Complaint.

Plaintiffs assert claims under:

- **Federal law**: Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act (ADA); Equal Pay Act; Family and Medical Leave Act (FMLA)
- **California law**: Fair Employment and Housing Act (FEHA); California Equal Pay Act; Labor Code § 925; wage statutes
- **South Carolina law**: South Carolina Human Affairs Law; South Carolina Payment of Wages Act; South Carolina common law

## II. RIGHT—TO—SUE AUTHORITY

On March 19, 2025, after filing a formal administrative complaint with the California Civil Rights Department (CRD), Plaintiff Robyn Barker received a **Right—to—Sue Notice** authorizing civil litigation under the **California Fair Employment and Housing Act (FEHA)**, California Government Code § 12900 et seq. (CRD Right-to-Sue Notice, **Exhibit A**)

On May 8, 2025, Plaintiff was likewise issued a **Right—to—Sue Notice** by the U.S. Equal Employment Opportunity Commission (EEOC), permitting federal claims under **Title VII of**

the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Equal Pay Act of 1963. (EEOC Dismissal and Notice of Rights, **Exhibit B**) .

Plaintiff also filed a Charge of Discrimination with the EEOC, setting forth her claims for discrimination, retaliation, unequal pay, harassment, and related violations. (EEOC Charge of Discrimination, **Exhibit C**) .

These Notices and the underlying Charge confirm Plaintiff's compliance with all administrative exhaustion requirements under both California and federal law, and authorize the claims asserted herein..

## III. CLAIMS ASSERTED

The following claims are asserted by Plaintiffs Robyn Barker and Chris Barker, either individually or jointly, and arise from the facts set forth in this Complaint. Where applicable, individual Defendants are alleged to be liable in both their official and personal capacities.

These claims are organized according to the applicable jurisdictional and legal authority and reflect distinct statutory protections and common law remedies.

## FEDERAL CAUSES OF ACTION:

Plaintiff Robyn Barker asserts the following federal causes of action, grounded in her status as a covered employee under **Title VII, the ADA, the Equal Pay Act, and the FMLA:**

1. **Retaliation – Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act (ADA), and Equal Pay Act of 1963**

2. **Sex Discrimination – Title VII**

3. **Religious Discrimination – Title VII**

Page 8 of 15

15. Unlawful Forum—Selection and Arbitration Clause—California Labor Code § 925

**SOUTH CAROLINA STATUTORY AND COMMON LAW CLAIMS:**

Plaintiffs assert the following causes of action arising under the South Carolina Human Affairs Law and South Carolina common law, based on acts that occurred within this **jurisdiction** and caused ongoing harm:

16. Retaliation – South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1—13—80

17. Religious Discrimination – SCHAL, S.C. Code Ann. § 1—13—80

18. Disability Discrimination and Failure to Accommodate – SCHAL, S.C. Code Ann. § 1—13—80

19. Unequal Pay Based on Sex – SC Equal Pay for Equal Work Act, S.C. Code Ann. § 41—1—110

20. Wage Theft / Failure to Pay Earned Wages and Commissions – SC Payment of Wages Act, S.C. Code Ann. § 41—10—10 et seq.

21. Wrongful Termination in Violation of Public Policy – South Carolina Common Law

22. Intentional Infliction of Emotional Distress (IIED) – South Carolina Common Law

23. Defamation and Tortious Interference with Prospective Economic Advantage – South Carolina Common Law

24. Civil Conspiracy – South Carolina Common Law

25. Negligent Supervision and Retention – South Carolina Common Law

26. **Aiding and Abetting Torts – South Carolina Common Law**

27. **Invasion of Privacy – False Light and Intrusion into Private Affairs – South Carolina Common Law.** Defendants intruded into Plaintiff's private affairs and portrayed her in a false and misleading light by authorizing or permitting unauthorized disclosures, compelling alterations to her personal workspace, and tolerating disparaging commentary on internal and external platforms, including social media.

**RESERVATION OF ADDITIONAL CLAIMS:**

Plaintiffs expressly reserve the right to amend this Complaint to assert additional claims, add statutes or common law theories, or name additional parties as may be revealed through discovery.

This reservation includes but is not limited to:

- Claims for negligent hiring, supervision, or retention;
- Claims based on newly discovered retaliation, defamation, or wage discrepancies;
- Additional statutory claims under **federal, South Carolina, or California law.**

Plaintiffs further request leave to amend pursuant to **Rule 15(a) of the South Carolina Rules of Civil Procedure** and any corresponding rule applicable in federal or coordinating state court jurisdictions.

Plaintiffs also reserve the benefit of **Rule 15(c)**, such that any amendment permitted by the Court may relate back to the original filing date where appropriate under the South Carolina or Federal Rules of Civil Procedure.

## IV. PRESERVATION OF JUDICIAL FORUM

Defendants have signaled their intent to enforce a **mandatory arbitration agreement** that was electronically signed by Plaintiff Robyn Barker following the start of her employment. She challenges the validity, scope, and enforceability of that agreement—one that was presented after employment had already commenced, and signed amid circumstances involving **economic duress** and a **lack of meaningful choice**. There are multiple legal and factual grounds supporting Plaintiff's objection to its enforceability, and she expressly **reserves the right to oppose enforcement** if the agreement is invoked as a defense in this action.

## V. FACTUAL ALLEGATIONS

Plaintiff alleges that the actions of Cornerstone OnDemand, Inc. and its agents created an environment of escalating retaliation and professional harm. While South Carolina does not allow a standalone claim for breach of the implied covenant of good faith and fair dealing in at—will employment, the facts of this case show an intentional pattern of manipulation, exclusion, and procedural abuse that ultimately violated public policy and retaliated against protected conduct.

At several key points, Plaintiff was misled about the purpose of internal HR meetings, denied an opportunity to prepare, and blindsided by an unexpected **"coaching outcome"** based on unfounded or exaggerated claims. A **confidential performance—related document** prepared by Plaintiff **was leaked** to its subject, Stephanie Krotz—a breach of internal confidentiality rules that intensified an already hostile situation.

What CSOD framed as ordinary HR practice was, in reality, part of a deliberate campaign to undermine Plaintiff's position. The result was an unsafe and unsustainable workplace, leading directly to constructive discharge and substantial emotional harm. These events support Plaintiff's

claims of retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

Plaintiffs have preserved extensive documentation of the events described, including more than **900 audio recordings (totaling roughly 7,700 hours), internal Slack threads, email exchanges, HR messages, payroll data, and formal disclosures made prior to termination.** These materials will be introduced through discovery or evidentiary submission as needed.

## VI. PRESERVATION OF RIGHTS AND ARBITRATION DISCLAIMER

Plaintiffs bring this action in a judicial forum based on **statutory rights granted under federal and California law,** including authorizations to proceed issued by the **U.S. Equal Employment Opportunity Commission (EEOC) and the California Civil Rights Department (CRD).**

Plaintiff Robyn Barker disputes the validity, scope, and enforceability of any alleged arbitration agreement, particularly one that was **presented only after she began her employment and under circumstances involving undue pressure and unequal bargaining terms. No knowing or voluntary waiver** of rights occurred, and Plaintiff reserves all defenses if such an agreement is raised by Defendants.

Co-Plaintiff Chris Barker was never employed by Defendants and is **not bound by any agreement.** His claims are based on independent harm and are unrelated to any contractual terms the company may seek to enforce.

## VII. RELIEF REQUESTED

Plaintiffs respectfully request all legal and equitable remedies available under federal and state law, including but not limited to:

Page 13 of 15

- Compensatory damages, including lost wages, lost benefits, and unpaid commissions;
- Emotional distress damages and damages for reputational harm;
- Loss of consortium on behalf of Co—Plaintiff Chris Barker;
- Back pay and front pay as appropriate under applicable statutes;
- Liquidated damages and statutory penalties pursuant to federal and state employment laws;
- Punitive damages for willful, malicious, or reckless violations of law;
- Pre—judgment and post—judgment interest;
- Reasonable attorneys' fees and costs, if counsel is retained pursuant to statute or contract;
- Declaratory or injunctive relief as permitted by law, including declarations regarding the enforceability of agreements and/or court orders prohibiting further retaliation;
- Such other and further relief as this Court deems just and proper.

Plaintiffs further reserve the right to retain limited—scope representation under South Carolina Rule of Civil Procedure 11 and California Rule of Court 5.425, including appearances for depositions, dispositive motions, or trial. This does not waive their pro se status unless counsel is formally substituted.

Prior to filing, Plaintiffs presented Defendants with a detailed factual and legal demand supported by evidence and allowed nearly two months for a voluntary resolution. Defendants did not acknowledge the legal violations raised or offer to resolve the matter.

Plaintiffs demand a **trial by jury** on all issues so triable.

Respectfully Submitted,
Date: May 12, 2025

ROBYN BARKER
rebarker1@hotmail.com
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

CHRIS BARKER
*Pro Se Plaintiff*
2195 Harvestwood Ln
Chapin, SC 29036

Filed under protest, pending ruling on Plaintiff's Motion to Proceed Under Initials. Plaintiff respectfully requests redaction of identifying information if the motion is granted.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:   **Notice to Complainant**
      CRD Matter Number: 202503-28599619
      Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents.  If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



EXHIBIT
A

CRD - ENF 80 RS (Revised 2025/02)



GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

RE:   **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 19, 2025

Robyn Barker
2195 Harvestwood Ln
Chapin, SC 29036

RE:    **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202503-28599619
Right to Sue: Barker / Cornerstone OnDemand, Inc

Dear Robyn Barker:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 19, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of

CRD No. 202503-28599619

Robyn Barker

Complainant,

vs.

Cornerstone OnDemand, Inc
1601 Cloverfield Boulevard, Suite 600 South
Santa Monica, CA 90404

Respondents

---

1. Respondent **Cornerstone OnDemand, Inc** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Robyn Barker**, resides in the City of **Chapin**, State of **SC.**

3. Complainant alleges that on or about **March 11, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, disability (physical, intellectual/developmental, mental health/psychiatric).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices, sex/gender, other, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied equal pay, asked impermissible non-job-

-1-
Complaint – CRD No. 202503-28599619

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

related questions, denied accommodation for religious beliefs, denied work opportunities or assignments, given additional work responsibilities or assignments.

**Additional Complaint Details: Retaliation for Addressing Misconduct:** Upon joining the company, I was immediately subjected to a hostile atmosphere. Colleagues explicitly stated their intent to facilitate my termination, creating an environment of fear and anxiety. Despite my efforts to address these issues through proper channels, including attempting to implement a Performance Improvement Plan for a direct report exhibiting retaliatory behavior, I faced escalating adverse actions. Instead of support, I encountered further isolation and was ultimately terminated without just cause.

**Hostile Work Environment:** The workplace was rife with exclusionary practices and unreasonable demands. I was consistently assigned excessive workloads due to team pushback and lack of cooperation. My attempts to delegate tasks appropriately were met with resistance, leading to extended work hours and heightened stress. The lack of support from management exacerbated these challenges, severely impacting my mental and physical health.

**Obstruction in Addressing Compensation and Operational Issues:** Over a 30-day period, I diligently sought to rectify payroll discrepancies affecting over ten team members and myself. Despite these efforts, the finance department ignored my concerns. Additionally, repeated requests for promised compensation plans for my team, due since January, were disregarded. The organization also failed to address systemic issues with account assignments, hindering my team's ability to meet undefined quotas and New Annual Recurring Revenue (ARR) targets. This lack of support forced me to shoulder additional responsibilities, exacerbating the hostile environment and contributing to my fear of punitive retaliation by HR for any perceived misstep.

**Religious Discrimination:** I was compelled to remove personal religious materials from my home office, infringing upon my right to express my faith. This action not only violated my personal rights but also contributed to the overall hostile environment.

**Continuous Anxiety and Fear of Retaliation:** From the outset, I was made aware that I was targeted for termination to "prove a point" against our CRO because "They didn't know why I had been hired." This knowledge led to daily anxiety attacks as I endured continuous hostility with no support. Fear of further retaliation kept me from seeking help, as I knew that my previous attempts had led to punishment and any new effort to address these issues would likely be ignored or result in more punitive actions.

-2-
Complaint – CRD No. 202503-28599619

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/0

## VERIFICATION

I, **Robyn Barker, am the Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On March 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chapin SC**

-3-

Date Filed: March 19, 2025

CRD-ENF 80 RS (Revised 2025/02)



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/08/2025

To: Robyn Barker
2195 Harvestwood Ln
CHAPIN, SC 29036
Charge No: 480-2025-02958

EEOC Representative and email:    GARRETT HOOVER
CRTIU Supervisor
garrett.hoover@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 480-2025-02958.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
05/08/2025

Christine Park-Gonzalez
District Director



EXHIBIT
B

Cc:

Carina Cortez
Cornerstone Ondemand Inc.
1601 Cloverfield Blvd STE 600S
Santa Monica, CA 90404

NA NA
Cornerstone OnDemand, Inc.
1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404

Please retain this notice for your records.

Disclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2025-02958 to the



Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file,** submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2025-02958 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

☐ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

☐ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

☐ **Only one** major life activity need be substantially limited.

☐ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

are not considered in determining if the impairment substantially limits a major life activity.

- [ ] An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it **would be substantially limiting when active.**

- [ ] An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- [ ] "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- [ ] The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- [ ] A person is not able to bring a failure to accommodate claim **if the individual is covered only under the "regarded as" definition of "disability".**

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

**CHARGE PRESENTED TO:**

EEOC

**AGENCY CHARGE NO.**

480-2025-02958

Name (indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.): Robyn Barker

Phone No.: 803-413-9702

Year of Birth: 1982

Mailing Address: 2195 Harvestwood Ln

CHAPIN, SC 29036

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local
Government Agency that I believe discriminated against me or others.

Name: CORNERSTONE ONDEMAND INC.

No. Employees, Members: 501+ Employees

Phone No.: (310) 752-1817

Mailing Address: 1601 CLOVERFIELD BLVD STE 600S
SANTA MONICA, CA 90404, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

**DISCRIMINATION BASED ON:**

Disability, Equal Pay, Religion, Retaliation, Sex

**DATE(S) DISCRIMINATION TOOK PLACE**

Earliest: 08/01/2024

Latest: 03/11/2025

**THE PARTICULARS ARE:**

I believe I have been discriminated against based on my sex (female), religion, and disability (PTSD), and retaliated against
for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the
Americans with Disabilities Act of 1990, as amended. I also believe I was denied rights protected under the Family and Medical
Leave Act (FMLA), and subjected to a hostile work environment and constructive discharge in violation of public policy.

From my first week in August 2024, I was subjected to a hostile and retaliatory work environment. I was told directly that I
was being targeted for termination to "send a message" within the company's leadership. I reported concerns related to
retaliation, wage theft, exclusion, and harassment to Human Resources and senior leadership multiple times, but received no
support.

I managed a 43-person team but was paid less than a white male employee who reported to me and managed a smaller team.
Despite repeated concerns, my pay and that of my team remained uncorrected. Over the course of 30+ days, I attempted to
resolve commission discrepancies and operational issues impacting myself and my team, which finance and leadership ignored.
In addition, I was told to remove personal religious materials from my home office setup during work-from-home video calls,
which infringed on my religious expression and contributed to a hostile and discriminatory environment.

Page 1 of 4

EXHIBIT

C

EEOC Form 5 (06/24)

EEOC No. 430-2025-00000 | PREPA INC.

In the final months of my employment, I disclosed my PTSD diagnosis and related mental health conditions and asked for support. Instead of offering accommodations or engaging in an interactive process as required by the ADA and FMLA, Human Resources responded with a coercive interrogation on November 4, 2024, labeled a "coaching session." This meeting was not neutral or remedial  it was designed to document allegations and set me up for termination. I was denied the opportunity to respond or present evidence. I was also instructed not to speak with colleagues, isolating me further and interfering with my ability to prepare any defense.

A follow-up meeting two weeks later, labeled as "Investigation Follow-up," revealed that a coaching plan would be implemented; however, no such plan was ever executed. Despite escalating these issues to C-suite leadership, I was met with silence and further exclusion. The organization's failure to follow its own internal grievance procedures, combined with its retaliatory use of HR protocols as a disciplinary tool, denied me any meaningful opportunity for resolution or protection. This departure from stated policy and fair process further evidences the company's bad faith and discriminatory intent.

I was terminated on March 11, 2025, without prior warning or performance plan, after months of documented protected activity and disability disclosure. These actions amount to sex discrimination, religious discrimination, disability discrimination and failure to accommodate, retaliation, hostile work environment, constructive discharge, and unequal pay in violation of the laws named above.

Throughout this process, I was never informed of any formal internal or external dispute resolution option, including arbitration, despite the company later claiming that I had signed a post-hire arbitration agreement. I was denied the opportunity to initiate or access any such process prior to termination, which further underscores the lack of fairness and transparency in the employer's handling of these matters.

For clarity and future recordkeeping, I would also like to confirm that my Charge is intended to include the following EEOC-enforced claims:

Retaliation (Title VII, ADA, Equal Pay Act)

Sex Discrimination (Title VII)

Sexual Harassment / Hostile Work Environment (Title VII)

Unequal Pay Based on Gender (Equal Pay Act, Title VII)

Religious Discrimination (Title VII)

Disability Discrimination and Failure to Accommodate (ADA)

FMLA Interference and Retaliation

Constructive Discharge and Hostile Work Environment (Title VII/ADA)

EEOC No. 480-2025-02958 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robyn Barker

05/08/2025

Charging Party Signature & Date

---

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

Page 3 of 4

EEOC Form 5 (06/24)

**CP ENCLOSURE WITH EEOC FORM 5 (06/24)**

**PRIVACY ACT STATEMENT**

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.