**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| ROBYN BARKER and CHRIS BARKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 3:25-5327-MGL |
| | § | |
| CORNERSTONE ONDEMAND, INC.; | § | |
| MICHAEL PAWLYSZYN; DAVE ROSS; | § | |
| CARINA CORTEZ; JORDANA DICKINSON; | § | |
| SARAH VIGIL; STEPHANIE KROTZ; JADE | § | |
| WHITE; ED KAUFMAN; and HIMANSHU | § | |
| PALSULE, | § | |
| | § | |
| Defendants. | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO COMPEL ARBITRATION**

## I. INTRODUCTION

Plaintiffs Robyn Barker and Chris Barker filed this action pro se in the Richland County Court of Common Pleas against the above-named defendants (collectively, Defendants). Defendants timely removed the case to this Court.

This matter is before the Court for review of the Report and Recommendation (the Report) of the United States Magistrate Judge suggesting to the Court defendants' motion to compel arbitration and partial motion to dismiss be granted. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II. FACTUAL AND PROCEDURAL HISTORY

The Barkers' claims relate to Robyn's employment with Defendant Cornerstone OnDemand and her eventual termination, the hiring process before her employment, and conduct following her termination. For purposes here, the Court accepts all facts alleged in the complaint as true.

Robyn was a "top candidate" for employment with SAP SuccessFactors prior to being hired by Cornerstone. Amended Complaint ¶ 7. During the recruiting process, Defendants Michael Pawlyszyn and Dave Ross coordinated to stall her hiring at SAP, recruited her for Cornerstone, and then pressured her into taking a job at Cornerstone. Amended Complaint ¶¶ 8-10. Ultimately, Robyn accepted the Cornerstone job. Amended Complaint ¶ 11.

Once at Cornerstone, Robyn was "subjected to coordinated exclusion, retaliation, manipulation, and targeted misconduct by multiple defendants" for the following eight months. Amended Complaint ¶ 12. She made "internal complaints about retaliation, discrimination, and emotional distress," and she "was terminated shortly thereafter." Amended Complaint ¶¶ 15-16. Her "claims include allegations of sex-based harassment and hostile work environment." Amended Complaint ¶ 19.

After Robyn began working, she was presented with a "Dispute Resolution Agreement" (DRA) which is described in more detail below. Amended Compl. ¶ 23, Ex. A. Robyn signed the DRA. *Id.*

"Chris Barker experienced emotional distress due to his wife's workplace mistreatment and was personally subjected to ritualized targeting by Dave Ross." Amended Complaint ¶ 20. He raises "claims for emotional distress and loss of consortium." Amended Complaint ¶ 22.

Defendants filed a motion to compel arbitration of Robyn's claims and to dismiss Chris's claims. They request the Court stay these proceedings while arbitration proceeds. The Magistrate Judge filed the Report on July 13, 2026, and the Barkers filed timely objections, to which Defendants replied.

## III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## IV. DISCUSSION AND ANALYSIS

As an initial point, the Barkers fail to object to the Magistrate Judge's recommendation Chris's claims should be dismissed. As the Court agrees with the Magistrate Judge's analysis, the motion will be granted in this respect.

### *A. Whether the DRA is unenforceable*

The Magistrate Judge recommends granting the motion to compel arbitration of Robyn's claims because "there is an arbitration agreement," the "claims are subject to that agreement," and a statutory exclusion "does not apply[.]" Report at 15. The Barkers raise two objections to this conclusion.

**1. *Whether the DRA is unenforceable by statute.***

Federal law generally makes arbitration provisions valid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006) (explaining an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (quoting 9 U.S.C. § 2)). With the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA), however, Congress provided an exception:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). "The term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

The Barkers maintain the EFAA allows Robyn to invalidate the DRA because she asserts a claim for sexual harassment. The Magistrate Judge disagreed, reasoning the EFAA applies only where the complaint "states a plausible claim for sexual harassment or sexual assault." Report at 8. "Thus, for the EFAA to apply, the plaintiff must state a claim of sexual harassment or sexual assault that can survive a Rule 12(b)(6) motion." Report at 8-9.

The Barkers object to this conclusion. Although they correctly note this question is still unresolved in the Fourth Circuit, they are wrong as a matter of statutory interpretation.

The EFAA expressly applies when a person alleges a sexual harassment dispute, which means it relates to "alleged . . . sexual harassment under applicable Federal, Tribal, or State law." § 401(4). Several courts have found the term "allege"—particularly given the "under applicable Federal . . . law" language—implicitly incorporates the Rule 12(b)(6) standard. *See, e.g.*, *Yost v.*

*Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) ("[T]he term "alleged" as used in § 401(4) is best read to implicitly incorporate the plausibility standard."); *Mangum v. Ross Dress for Less, Inc.*, 777 F. Supp. 3d 519, 528 (E.D.N.C. 2025) (adopting the reasoning in *Yong*).

The Court in *Yost* gave several reasons for this conclusion, two of which the Court believes are particularly compelling. First, "[i]n enacting a statute that expressly referred to allegations of violations of law, it is reasonable to infer that Congress in 2022 was aware that only viably pled (that is, plausible) allegations of sexual harassment law had the capacity to proceed past the pleading stage in federal court." *Yost*, 657 F. Supp. 3d at 585.

Second, "allowing implausibly alleged claims to defeat arbitration agreements 'would affront Congress's intent in enacting the FAA—of which, critically, the EFAA is a part.'" *Mangum*, 777 F. Supp. 3d at 528 (quoting *Yost*, 657 F. Supp. 3d at 586). The Court agrees with this analysis and accordingly will overrule this objection.

The Barkers fail to object to the Magistrate Judge's recommendation she failed to state a claim for sexual harassment or assault which would survive Rule 12(b)(6). *See* Obj. at 1 ("These objections are limited . . . ."). The Court agrees with the analysis in the Report; therefore, the claim fails and the EFAA is inapplicable. For clarity, the Court does not dismiss any of Robyn's claims herein because Defendants' motion seeks only to compel arbitration on Robyn's claims, and the partial motion to dismiss relates solely to Chris's claims.

***2. Whether the DRA is inapplicable by its terms***

The Barkers also object to the Magistrate Judge's "conclusion that all of [her] claims fall within the Dispute Resolution Agreement without separately interpreting and applying the DRA's express contractual exclusion for sexual-harassment claims." Obj. at 1.

The DRA requires "binding individual arbitration to resolve all disputes that might arise out of or be related in any way to [Robyn's] employment by [Cornerstone]." Amended Compl. Ex. A, ¶ 1. It also provides in relevant part:

> The only exceptions to binding arbitration shall be for sexual assault claims (meaning a nonconsensual sexual act or sexual contact as defined by 18 U.S.C. section 2246 or similar state or tribal law, including when the victim lacks the capacity to consent) or sexual harassment claims (meaning conduct that is alleged to constitute sexual harassment under applicable federal, state or tribal law), unless I voluntarily elect to submit such claims to arbitration . . . .

Ex. A, ¶ 2. The paragraph goes on to recognize exceptions for various claims arising out of other federal and state laws, such as claims under the National Labor Relations Act, which are brought before the National Labor Relations Board. *Id.*

The Barkers argue this exception "does not itself establish that the parties incorporated [the EFAA] wholesale or agreed [it] would be governed by the same Rule 12 plausibility threshold applied by the [Magistrate Judge] to the statutory EFAA issue." Obj. at 2-3.

Defendants argue, however, "the language in the DRA is almost identical to the definition of a 'sexual harassment dispute' under the EFAA." Reply to Obj. at 2. They conclude the agreement therefore "clearly intended to track and be governed by the EFAA." *Id.*

The Court agrees with Defendants. The text of the agreement is designed to accord with the EFAA, and this conclusion is supported by the exclusion of other similar statutory claims which are resolved in other non-arbitral proceedings. It also would be illogical for the agreement to exclude more claims relating to sexual harassment than the EFAA as it would contradict the clear intent of the parties to require arbitration of all claims except where otherwise provided by law. Accordingly, this objection will be overruled, too.

### *B. Whether Defendants waived arbitrability*

In response to the motion to compel arbitration, the Barkers argued, "Defendants waived their right to compel arbitration by engaging in conduct wholly inconsistent with enforcement." Response to Mot. ¶ 35. The Magistrate Judge considered this argument and found it meritless: "there is no support for [the Barkers'] position that the defendants delayed enforcement or acted inconsistently with the agreement, as they promptly moved to compel arbitration following removal to this court and promptly refiled the motion upon [the Barkers'] filing of an Amended Complaint." Report at 8.

The Barkers object to the Report, stating it "does not separately analyze the full pre-suit/internal-HR/termination/severance course of conduct" they argue constitutes waiver. Objections at 5. They insist a wide range of Defendants' conduct prior to filing suit constitutes waiver of Defendants' right to require arbitration.

This objection is without merit for the reasons explained in the Report. Defendants clearly asserted their right to require arbitration as soon as the case was in this Court. It was unnecessary—and impossible—for them to do so at any earlier point. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) ("Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration."). Accordingly, this objection will be overruled as well.

### *C. Whether the arbitration agreement applies to alleged, pre-employment torts*

The Magistrate Judge suggests the arbitration agreement applies to all of Robyn's claims because its terms, noted above, are expansive. The Barkers object the Magistrate Judge "does not separately address the contractual question presented by the pleaded allegation of a tort completed before Robyn's Cornerstone employment relationship existed." Obj. at 8. They insist this

"temporal-scope issue" means the arbitration agreement is inapplicable to the torts alleged to occur prior to her hiring. Objections at 8.

The Barkers correctly recognize arbitration agreements can apply retroactively. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) (stating "courts have generally applied broad 'any dispute' language retroactively" and holding agreement at issue applied to earlier conduct). By its terms, the DRA applies to "all disputes that might arise out of or be related in any way to [Robyn's] employment" with Cornerstone. Amended Compl. Ex. A, ¶ 1.

Despite this expansive language, the Barkers insist the DRA is inapplicable to her following claims: fraudulent inducement, tortious interference with prospective advantage, and civil conspiracy. Amended Compl. ¶36(h)-(j). She is mistaken, as all three claims relate to her employment with Cornerstone.

Her fraudulent inducement claim expressly relates to her "recruitment" to Cornerstone. Amended Compl. ¶ 36(h). Her tortious interference claim concerns her "SAP candidacy" which defendants allegedly "disrupted" to "reserve her for a future role at [Cornerstone]." Amended Compl. ¶¶ 8, 36(i). Finally, and similarly, her civil conspiracy claim alleged two defendants "conspired to derail" her employment with SAP "and later retaliated at [Cornerstone]." Therefore, all three claims indisputably relate to her employment with Cornerstone and are therefore covered by the DRA. Accordingly, this objection will also be overruled.

## V. CONCLUSION

After a thorough review of the Report and the record in this case under the standard set forth above, the Court adopts the Report and incorporates it herein. Therefore, it is the judgment

of the Court the defendants' partial motion to dismiss and to compel arbitration is **GRANTED**. Chris's claims are therefore **DISMISSED WITHOUT PREJUDICE**.

Additionally, the case will be stayed pending arbitration proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The parties are directed to provide a status report to the Court every sixty days.

**IT IS SO ORDERED.**

Signed this 14th day of September, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

*****

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.